**John J. JOYCE**

v.

**UNITED STATES of America.**

**Civ. A. No. 70–226.**

United States District Court,
W. D. Pennsylvania.

July 16, 1971.

Bagley, Kennedy, Sydor & Heck, Pittsburgh, Pa., for plaintiff.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

GOURLEY, Senior District Judge.

This is an action under the Federal Tort Claims Act. After a full and complete trial was held and while the Court was formulating an Opinion, a most unusual course of action is being pursued by the United States.

The Government, by presenting a Motion to Amend Its Answer, questions the jurisdiction of the Court. Generally, a question of this nature can be raised at any time but there are some exceptions. The legal question presented is based on the thesis that the rights of the injured plaintiff fall within the provisions of the Federal Employee's Compensation Act rather than the Federal Tort Claims Act.

A disposition of the Motion is first required since if the defense is allowed, it would be necessary for the Court to stay its proceedings until the rights under the Federal Employee's Compensation Act are finally resolved. Somma v. United States, 283 F.2d 149 (3 Cir.).

A complete statement of facts is required to best understand why the Motion for Leave to Amend the Government's Answer raising said jurisdictional question must be denied.

The plaintiff, a postal employee, was on his way to work when a large bar of soap came from a window of the United States Courthouse and Post Office Building, and struck the plaintiff on the head. The accident occurred on one of the busy street intersections in the business district of the City of Pittsburgh, Pennsylvania, some 300 to 350 feet from where the plaintiff would have entered the Federal Building for the performance of his duties. The site of the injury was on a public sidewalk owned by the City, available for use by many thousands of persons each day. The only part of the sidewalk owned by the United States was $9\frac{1}{4}$ inches from the bottom of the building and it is not disputed that no person could walk on this small area.

■ ■ Unquestionably, employment is the reason or the cause for the workman's journey between his home and place of business. An employer, however, has never been held responsible for injuries to an employee, absent a contractual provision, on a portal to portal basis, or from the doorsteps of a home to the entranceway of the business enterprise. Liability for an injury on the premises of an employer is a compromise between the extreme of no coverage whatsoever and coverage for the whole journey. If such a compromise has any significance, the injured employee should, at least, be on his employer's premises for coverage to exist. Sidewalk maintenance and safe passageway requirements, which by local City Ordinance all abutting property owners have a duty to provide, do not make the sidewalk the premises of the employer. Furthermore, the law seems to be settled and it is generally taken for granted that workmen's compensation coverage was not intended to protect the employee against all perils of that journey. See 1 Larson Workmen's Compensation Law, 1968 Ed., § 15.11, p. 195. O'Keeffe v. Smith, etc., Associates, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 ·(1964) is not applicable here. In *O'Keeffe* an employee who had been transported to Korea and drowned while more than 30 miles from his job site on his off day, was found to be covered under the provisions of the Longshoreman's and Harbor Worker's Compensation Act, 33 U.S. C.A. § 901, et seq., because the conditions of his employment created a "zone of special danger." No reason or basis exists to conclude that the vicinity of Grant Street and Seventh Avenue in Pittsburgh, Pennsylvania, the area where the plaintiff was injured, constitutes a "zone of special danger." Very simply stated, the public sidewalk, under the circumstances which existed in this case, was not the premises of the employer. This is particularly true in this proceeding since there was no right to control said public thoroughfare which was for all pedestrian use.

No sound or real basis exists to conclude or accept the thesis of the United States since there is no substantial question presented of coverage under the Federal Employee's Compensation Act.

If the Court is in error in concluding that coverage does not exist for the reasons stated, the Motion of the Government raising the jurisdictional question must be denied for additional reasons.

■ I must state my awareness that the general rule permits jurisdiction to be raised at any time in the trial and appellate courts. Norton v. Larney, 266 U.S. 511, 45 S.Ct. 145, 69 L.Ed. 413.

However, the general rule is subject to the exception that raising a question of this nature is discretionary with the Court where the defendant has had time and opportunity on many occasions to do so and be heard.

Where a defendant chooses to participate fully in discovery, pretrial and in the preparation and formulation of the issues for trial, said litigant has no right to amend its answer to deny jurisdiction. Indeed, for the Court to permit the amendment under the circumstances herein set forth it would be an abuse of discretion. Di Frischia v. New York Central Railroad Company, 279 F. 2d 141 (3 Cir. 1960); Klee v. Pittsburgh and West Virginia Railway Company, 22 F.R.D. 252 (W.D.Pa.1958), and Kreger v. Ryan Brothers, Inc., 308 F. Supp. 727 (W.D.Pa.1970).

■ In this proceeding the defendant participated throughout the full and complete preparation for and trial of this proceeding without giving any consideration to the Federal Employee's Compensation defense. This included pleadings, motions, pretrial conferences, discovery, arguments and trial. The action was filed on February 25, 1970, and trial commenced May 20, 1971. For a full and complete understanding of the background of this proceeding, the Court has inserted as an appendix the complete history of the action as it appears in the records in the office of the Clerk

of Court. A perusal of this record readily indicates the numerous instances that the defendant could have interposed its defense, but failed to do so.

It was only through happenstance that thoughts regarding lack of jurisdiction arose in the minds of the legal department of the United States. During the preparation of the Court's Opinion, a question developed requiring the assistance of counsel for all parties. The matter involved how the Court could require the United States to repay to the Postal Department the monies of the plaintiff that were used to pay lost wages during absence from his employment since the Post Office Department had used sick leave hours to make said payments. During a hearing that was held for this purpose alone the Court suggested, in view of the many legal problems which existed in this action, it might be to the best interest of all concerned to endeavor to settle and compromise the action.

It is not disputed that the Government during the discussions which trial counsel had with the office of the Attorney General relative to the settlement suggestion that the possible defense of the Federal Employees' Compensation Act was first conceived, and it was suggested to the First Assistant United States Attorney who was trial counsel for the United States.

In addition, the plaintiff had filed with the Postal Department after his accident a claim under the Federal Employees' Compensation Act. Said action was taken on the 26th day of August, 1968.

Although counsel for the parties have stipulated that two separate medical bills, not claimed as damages by plaintiff, were paid by the Bureau of Workmen's Compensation, United States Department of Labor, this fact cannot create jurisdiction where it does not otherwise exist.

The appropriate Federal Agency did nothing further to process said claim in any way whatsoever. Nor is it disputed that the head of the Postal Department in Pittsburgh advised the plaintiff and his counsel that no basis existed to bring the plaintiff's accident and injuries within the ambit of the Federal Employees' Compensation Act.

It appears conclusively to me that it would be a gross miscarriage of justice to permit the United States to play fast and loose with the Court and be permitted to change boats, not in the middle of the stream, but after landing at dock site. Seventeen months of a judge's time will have been wasted in one way or another in one of the busiest United States Courts in the Federal Judicial system. In addition, a fraud would be perpetrated on the plaintiff and his legal counsel due to the absolute and complete inattention that was given the original compensation claim.

To recapitulate this defense, in my considered judgment, is absolutely without basis in law or fact for the many and diverse reasons heretofore stated.

Accordingly, the Motion for Leave to Amend the Answer in which the defense of jurisdiction is presented based on the legal thesis that the claim of the injured government employee falls within the provisions of the Federal Employee's Compensation Act will be denied.

The Court will, therefore, adjudicate the merits of the cause of action under the Federal Tort Claims Act since jurisdiction exists.

To restate briefly the facts—

The case involves a United States Postal employee enroute to work who, while walking along the sidewalk adjacent to the United States Post Office and Courthouse Building, was struck on the top of the head by a bar of soap coming from a window in the said building located approximately fifty feet above street level. As a result of this blow to the head, he sustained severe injuries.

Pennsylvania law is settled that where a falling object is thrown onto the street from within a building in such a way that it must have been propelled by a human agency, prima facie evidence

exists that a wilful or negligent act occurred on the part of someone, and this is especially true where the owner of the building, or the person charged with fault through its employees or agents had exclusive control of the object which occasioned the injury. Tallarico v. Autenreith et al., 347 Pa. 170, 31 A.2d 906 (1943).

The evidence is undisputed in this proceeding that the United States of America had exclusive control of the building; that the soap thrown or propelled from the lavatory on the third floor was the property of the United States, and no evidence has been offered to establish or show any fault on the part of the plaintiff. In fact, employees of the United States were working in the lavatory area from where the soap was propelled a very short time before the accident.

There is no possible contributory negligence on the part of the plaintiff and the circumstances under which the accident occurred have been confirmed by other employees of the United States who witnessed the whole or part of the incidents which gave rise to the accident and injuries. No further discussion need be given relative to liability and consideration must be most carefully given to the most unusual injuries, mental and physical, expenses, damages and material impairment of the plaintiff's economic horizon.

Prior to discussing in any detail the amount of damages, the Court must next determine if the plaintiff is entitled to recover any damages in excess of $15,000.00. This is the amount which was demanded when the plaintiff's claim was first made by his legal counsel to the appropriate administrative Federal agency.

There is no question that such claim was properly and timely made pursuant to 28 U.S.C.A. § 2675(a). The question here is whether once having claimed a certain amount, the plaintiff is forever restricted to that amount. Such an absolute rule might provide some semblance of certainty and be helpful in evaluating most claims, but it would achieve very little justice in those cases where additional facts subsequently discovered indicate greater damages have been sustained than originally contemplated. Congress has provided for such contingencies in 28 U.S.C.A. § 2675(b) which requires that the amount of the initial claim to the administrative agency sets the limit of liability unless there is newly discovered evidence not reasonably discoverable at the date of presenting the claim or there are intervening facts. I believe that the present case is one in which there were newly discovered facts meeting the statutory requirement. See Colin v. United States, 324 F.Supp. 121 (W.D.Mo.1970) where plaintiff in a Federal Tort Claims action was granted leave to amend his complaint to increase the initial amount prayed for as damages because he conceivably could show newly discovered evidence or intervening facts. Here plaintiff has met this burden by introducing a sufficient quantum of evidence at trial. In fact the medical evidence introduced by the plaintiff indicates the subtle nature of his injuries; he could not possibly have known their full monetary extent at the time of filing his administrative claim. Moreover, by local rule of court, in effect at the time plaintiff filed his complaint, plaintiff was precluded from asserting a specific sum of money damages. This rule bars a plaintiff from asserting any amount, other than the jurisdictional amount with particularity. The initial claim was made to the administrative agency within days of the injury, at a time when the full benefits of medical diagnosis were not available. As noted previously, the evidence is sufficient to establish the complex nature of the injuries involved here. Only after extensive physical, psychological and psychiatric examination was it possible to determine the nature of the plaintiff's injuries. A rule that would require plaintiff to know the full extent of his injuries when they are such that medical

science cannot immediately establish them is neither logical or practical. Thus the view of this Court is that a greater amount than initially demanded is both warranted in this case and authorized by 28 U.S.C.A. § 2675(b). See United States v. Bowdach, supra.

■ The Government contends that it should be credited for having paid Mr. Joyce his wages while he was absent from work. This position cannot be legally sustained. Although the plaintiff continued to receive his "wage" while absent from work due to the injuries herein involved, he was able to do this only by depleting his accumulated sick leave. The Government, as an employer, should not be entitled to claim the benefit of this accrued sick leave fund since the employee would receive the amount credited to his record upon his retirement. Six Hundred Forty-three (643) hours have been used up which are directly related to the injuries sustained; in other words, but for the accident herein complained of, the plaintiff would have had the benefit of those hours at retirement.

■ The doctrine known as the collateral source rule, cited by the Government, precludes a tortfeasor from benefiting from wages paid from a source independent of the wrongdoer. The rule does not mean that where an employer fortuitously is also the tortfeasor that it should get credit under all circumstances for the wages paid.

In Feeley v. United States, 337 F.2d 924 (3 Cir. 1969), it was held that it would be improper to recover as damages from the United States the value of medical care provided without charge to plaintiff by the Veterans' Administration. The Court specifically stated, however, that this result is limited to the facts of that case. Feeley v. United States, supra. Accordingly, I do not feel that that case is applicable here.

The plaintiff certainly has lost something because his accrued sick leave account has been reduced by the number of hours he was absent from work due to the injuries he sustained. The Government also contends that Pennsylvania law requires that the plaintiff should be denied damages for lost wages because he received his full salary while on sick leave, citing Antonelli v. Tumolo, 390 Pa. 68, 132 A.2d 285 (1957). However, I do not read this case to say that under no circumstances can a plaintiff recover where he has received his full salary. I would agree with the Government's contention that this case would be dispositive of the issue present here if the plaintiff had suffered no actual loss. Plaintiff Joyce has suffered a real loss however because his accrued sick leave has, as indicated above, been diminished.

■ No useful purpose would be served by making detailed reference to the medical conditions which have been and will be experienced by plaintiff for the balance of his life. The evidence clearly indicates, however, that as a result of the injuries herein complained of, the plaintiff has suffered and will continue to suffer the following medically documented disorders: organic brain syndrome; post-traumatic syndrome; aggravation of a pre-existing compulsive reaction; concussion, and shock to his nervous system. The record indicates that these disorders have been manifested by the development of permanent and chronic headaches, anxiety, impaired memory, and impaired abstract thinking. I am positively convinced that the existence of these injuries has been firmly established and that plaintiff is not a malingerer.

Indeed plaintiff is a most unusual and dedicated type of individual who extends himself in his employment far beyond the norm of most people. As indicated, he has suffered most grievous harm and injury, with extreme discomfort, pain, suffering and inconvenience. He has incurred substantial medical expense for medication and hospitalization, and will incur such expense in the future. Moreover, there can be no doubt that as a result of the injuries sustained, the range of plaintiff's economic horizons has been

drastically curtailed. In other words, there has been a substantial impairment of his future earning power in view of the difficulty he would encounter at his age and with his medical history if for some reason he would be forced to seek employment elsewhere. These losses, properly evaluated and reduced to present worth, are substantial.

Findings of Fact and Conclusions of Law have not been separately stated, but are contained in the body of this Opinion as specifically authorized by Federal Rule of Civil Procedure 52(a).

## APPENDIX

Civil Action No. 70–226    NON JURY    TO BE TRIED BY JUDGE GOURLEY

JOHN J. JOYCE    Pltf: Bagley, Kennedy, Sydor & Heck, Esqrs.
vs.    716 Frick Bldg., Pgh., Pa.   15219

UNITED STATES    Deft: U. S. Attorney
OF AMERICA    633 U. S. Courthouse, Pgh., Pa.   15219

Federal Tort—Personal Injuries
sustained when struck on head by
object dropped from P. Office window.

**1970**

Feb. 25   Complaint filed.

Feb. 25   Summons issued.

March 13   Motion to Dismiss filed by deft.
Argument List of Miller, J.

March 17   Summons returned served on U.S.Att. on 3/4/70.

Apr. 2   Notices mailed advising case assigned to Miller, J.
Listed for argument before Miller, J. for 7/9/70 at 2 P.M.

Jul. 8   Order granting leave to U. S. A. to withdraw motion to dismiss (Miller, J.)

Jul. 10   Order fixing pretrial procedure.  (Miller, J.)

July 20   ANSWER filed.

July 22   Notice of service of interrogs (1–41) on pltf. filed by deft.

July 30   Notice of deposition of John J. Joyce on 8/19/70 filed by USA.
Non-jury trial list of Miller, J. for week 8/31/70

Aug. 26   Motion filed and Order entered continuing case to October non-jury trial list.  (Miller, J.)

Sept. 8   Delinquency notice to Bagley, Esq. re: interrogs 7/22/70 meb

Oct. 5   Delinquency notice to Bagley, Esq. re: interrogs 7/22/70 meb

Oct. 6   Deft's. interrogatories to pltf. with pltf's. answers thereon filed.  (Nos. 1–41)
Non-jury trial list of Miller, J. for Nov. 1970

Nov. 2   Motion filed 10–30–70 and Order entered 11–2–70 directing that case is continued (Miller, J.)

Nov. 12   Defts Pretrial stmt filed.

Dec. 9   Pltf's Pretrial statement filed.

**1971**

Mar. 24   Amended pretrial statement filed by pltf.

April 23   Letter received from Judge Miller assigning case to Judge Gourley for trial.

Apr. 26  Order entered directing that parties file stipulation by 5–10–71; fixing non jury trial for 5–20–71 at 10:00 A.M.  (Pretrial to be held same day prior to trial) (Gourley, J.)

May 10  Stipulation of counsel filed.

May 20  Non-jury trial opens before Gourley, J.

May 21  Non-jury trial continues.

May 21  Order entered directing reporter transcribe record at expense of parties.  (Gourley, J.)

May 26  Non Jury trial continues and concludes C.A.V. before Gourley, J.  Non Jury Trial memo filed.  (Rep. J. Miller)

June 1  Memorandum Order entered directing that the U. S. submit forthwith certain information & fixing hearing for 6–7–71 at 10:00 A.M.  (Gourley, J.)

June 7  Hearing on order directing that U. S. submit certain information and Gov't motion to amend answer begun and continued to 6–18–71 at 10:00 A.M. before Gourley, J. (Rep. J. Miller) (NON JURY TRIAL)

June 8  Transcript of proceedings in Non Jury trial held before Gourley, J. on 5/20/71 filed (Volume 1, 11, 111 (rep Joseph I. Miller)

June 9  Memorandum Order, dated 6–8–71, entered directing that counsel submit suggested findings of fact and conclusions of law together with briefs on or before 6–17–71; the Clerk is directed to file the letter dated 6–8–71, from J. I. Miller in this proceeding.  (Gourley, J.)

June 10  Government's motion to amend answer and delay final trial disposition filed and Order, dated 6–7–71, entered directing that the within matter is fixed for hearing on 6–18–71 at 10:00 A.M. (Gourley, J.)

June 10  Government's proposed AMENDED ANSWER filed.

June 14  Memo Order entered directing parties file briefs and fixing hearing for 6–18–71.  (Gourley, J.)

June 18  Hearing on (NON JURY TRIAL), order directing U. S. submit certain information and motion to amend answer continues and concludes C.A.V. before Gourley, J.  Hearing memo filed.  (Rep. Joe Miller)

June 21  Transcript of proceedings held before Gourley, J. on 6/7/71 filed.  (Rep: J. Miller) (Re hearing of sick leave hours of pltf.)

June 21  Transcript of hearing on Motion to Amend Deft's. Answer before Gourley, J. on 6/7/71 filed.  (Rep: J. Miller)

June 22  Memorandum Order dated 6/18/71 entered giving parties to 7/1/71 to endeavor to compromise; if not accomplished Court will file Opinion 10 days thereafter; directing Court Reporter transcribe remaining proceedings not transcribed.  (Gourley, J.)

June 30  Stipulation of counsel filed.