John J. JOYCE

v.

UNITED STATES of America, Appellant.

No. 71-2057.

United States Court of Appeals,
Third Circuit.

Argued Jan. 18, 1973.

Decided Feb. 16, 1973.

---

Alan S. Rosenthal, John B. Scott, Attys., Department of Justice, Washing-

ton, D. C., L. Patrick Gray, III, Asst. Atty. Gen., Richard L. Thornburgh, U. S. Atty., for appellant.

Ronald H. Heck, Bagley, Sydor & Heck, Pittsburgh, Pa., for appellee.

Before VAN DUSEN, and ADAMS, Circuit Judges and BARLOW, District Judge.

## OPINION OF THE COURT

### PER CURIAM:

This is an action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, et seq. The plaintiff, John J. Joyce, is a United States Postal Service employee. He seeks recovery for injuries sustained when he was hit on the top of his head by a bar of soap that was either dropped or thrown from the window of a restroom on the third floor of the United States Post Office and Courthouse Building in Pittsburgh, Pennsylvania.

The incident occurred at approximately 5:45 A.M. on August 26, 1968, while Mr. Joyce was walking along the sidewalk adjacent to the Post Office and Courthouse Building and on his way to enter the building in order to commence his 6:00 A.M. shift as a postal clerk. At the time he received the blow, Mr. Joyce was approximately 300 to 350 feet from the employees' entrance to the building on that portion of the sidewalk owned and maintained by the City of Pittsburgh.

Within two days after the incident occurred, Mr. Joyce notified the Bureau of Employees' Compensation (hereinafter BEC) of his injuries. In the "Notice of Injury" filed with BEC, Mr. Joyce, in addition to describing the place where the injury occurred, the injury's cause, and the nature of the injury, certified that "the injury described * * * was sustained in the performance of [his] duties as an employee of the United States Government. * * *"

The filing of Mr. Joyce's notice was followed on December 10, 1968, as required, by an official supervisor's Report of Injury that was executed by the As-

sistant Postmaster. It provided BEC with summary answers to a variety of form questions relating to the accident and to Mr. Joyce's injuries. Thereafter, on January 16, 1969, BEC approved for payment, on Mr. Joyce's behalf, two medical bills incurred as a result of the accident and certified to BEC by the United States Public Health Service.

Approximately nine months later, BEC requested additional information concerning the accident from Mr. Joyce's superiors. Then, on October 8, 1970, the examiner assigned to the case entered his findings formally approving the claim. In his "Notice of Injury," Mr. Joyce stated that as a result of the blow to his head he had experienced "headaches, dizziness, and pain continually at the point where the bar of soap hit [him]." The only demonstrable injury described was the contusion of the head.

Shortly after its approval of the claim, BEC authorized Mr. Joyce to undergo further medical examinations in order to determine the full extent of his treatment needs. On October 16, 1970, BEC wrote to Mr. Joyce, advising him to make an appointment with the United States Public Health Service in Pittsburgh to be examined and treated, if necessary, for possible residual effects of the injury. A similar letter was also sent by BEC to the Public Health Service, confirming the authorization for further treatment and advising clinic officials how best to expedite BEC's payment of any subsequent medical bills.

Having received no response from Mr. Joyce, BEC again wrote to him on February 17, 1971, asking for an explanation of why no medical reports had been received. Mr. Joyce did not respond to that letter.

On February 25, 1971, Mr. Joyce filed the present complaint against the United States under the Federal Tort Claims Act, seeking damages for a sum in excess of $10,000. Following several days of a non-jury trial, which commenced on May 20, 1971, the Government filed a motion for leave to amend the answer. In its

motion, the United States asserted that the district court lacked jurisdiction to adjudicate plaintiff's cause of action until such time as the Secretary of Labor, through BEC, determined that the injuries were not covered by the Federal Employees Compensation Act (FECA). The court was asked to stay its proceedings in order to allow plaintiff time to complete the processing of his FECA claim.

■ The district court, 329 F.Supp. 1242, denied the motion and entered judgment in favor of Mr. Joyce for approximately $35,000. The court held that a district court must defer to BEC only when the facts in a particular case raise a substantial question of FECA coverage and that since no such question was presented it was free to adjudicate the cause of action. Alternately, the district court stated that even if FECA coverage did, in fact, exist, because the FECA issue was raised so late in the pro-

ceedings, it had discretion whether to consider the Government's motion and under the circumstances would deny such motion.[1]

The FECA, 5 U.S.C. § 8101, et seq., provides the exclusive remedy for a Federal employee's injuries covered by that Act.[2]

The nature and purpose of the FECA were stated by this Court in Somma v. United States, 283 F.2d 149, 151 (3d Cir. 1960):

"[The] Act sets up a comprehensive system of workmen's compensation for federal employees. Congress provided that [the FECA] be interpreted and administered by a Bureau of Employees' Compensation and an Appeals Board whose action is not reviewable by the courts. * * * Obviously, the purpose in so providing was to insure uniformity of interpretation and policy. * * *"

---

1. *But see* F.R.Civ.P. 12(h)(3): "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

 Although the district court relied in part upon DiFrischia v. New York Central Railroad, 279 F.2d 141 (3d Cir. 1960), that decision is distinguishable. There, although first filing an answer challenging the averment of diversity jurisdiction, the defendant later entered into a stipulation with the plaintiff that the district court did have jurisdiction. Nearly two years later, after extensive trial preparation and after the statute of limitations would have run on the plaintiff's claim, the defendant filed a motion to dismiss for lack of jurisdiction. This Court held that under these unusual circumstances dismissal of the complaint was improper. "A defendant may not play fast and loose with the judicial machinery and deceive the courts." 279 F.2d at 144. In the present case, there is no evidence of deception or that the government by "sitting on its rights" may cause the plaintiff an effective loss of his claim through the running of the statute of limitations.

2. 5 U.S.C. § 8102(a) provides:
 (a) The United States shall pay compensation as specified by this subchapter

for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty, unless the injury or death is—

 (1) caused by willful misconduct of the employee;

 (2) caused by the employee's intention to bring about the injury or death of himself or of another; or

 (3) proximately caused by the intoxication of the injured employee.
5 U.S.C. § 8116(c) provides:

 (c) The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. However, this subsection does not apply to a master or a member of a crew of a vessel.

■ The FECA has thus been made the exclusive remedy for federal employees within its coverage, and such employees have no election of remedies. *See* United States v. Demko, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966).

As this Court recognized in *Somma, supra,* the Act explicitly provides that all questions "arising under" the FECA shall be decided by the Secretary of Labor, and his decision in allowing or denying a payment "is (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b).

■ The statutory test of coverage is whether the employee was injured "while in the performance of his duties." 5 U.S.C. § 8102(a). In light of the foregoing, it is clear that an injured Federal employee must seek administrative relief before he files suit under the Federal Tort Claims Act, unless his injuries are clearly not sustained "while in the performance of his duties."

As stated in *Somma, supra,* at 151 of 283 F.2d:

"Where * * * a substantial question of coverage exists especially in an area in which the [Appeals] Board has not as yet authoritatively spoken * * * it [is] extremely important that it have the opportunity to speak first."

■ The circumstances present here did raise "a substantial question" of FECA coverage. Before filing the present action, Mr. Joyce submitted a "Notice of Injury" to BEC, in which he certified that his injuries were sustained in the performance of his duties as an employee of the United States, and the record reflects that FECA coverage was acknowledged by BEC and that BEC "accepted the injury for contusion of the head." It is also undisputed "that two separate medical bills incurred as a result of the accident * * * were paid by the Bureau of Employees Compensation, United States Department of Labor." These facts certainly raise "a substantial question" of coverage.

In Cobia v. United States, 384 F.2d 711 (10th Cir. 1967), cert. denied, 390 U.S. 986, 88 S.Ct. 1182, 19 L.Ed.2d 1290 (1968), the court, when confronted with a similar factual situation, ruled that an injured employee's acceptance of FECA benefits created a bar to a later action under the Federal Tort Claims Act.

■ Although it is regrettable that the Government did not raise the FECA issue more promptly, once that issue was raised, the district court had no discretion to proceed to a final adjudication of the cause of action without first requiring the plaintiff to complete the processing of his administrative claim under the FECA. Where there is no jurisdiction over the subject matter, there is, as well, no discretion to ignore that lack of jurisdiction. *See* F.R.Civ.P. 12(h)(3), *supra* note 1.

■ It is well settled that no action lies against the United States unless authorized by Congress. *E. g.,* Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). And despite the fact that the Federal Tort Claims Act provides, broadly, that the district court shall have exclusive jurisdiction of civil actions on claims against the United States for money damages, a clear showing of relinquishment of sovereign immunity in the particular case is required to give jurisdiction for tort actions. Dalehite v. United States, 346 U.S. 15, 30–31, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

The judgment of the district court will be vacated and the matter remanded to the district court with instructions to stay any action pending outcome of the proceedings under the FECA.