Lawrence MITCHELL and Algerie Mitchell, Plaintiffs-Appellants,

v.

ARCHIBALD & KENDALL, INC., Defendant-Appellee.

No. 77–2216.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 12, 1977.

Decided March 2, 1978.

Rehearing Denied April 28, 1978.

Melvin Gaines, Chicago, Ill., for plaintiffs-appellants.

James R. Quinn, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, Chief Judge, PELL and WOOD, Circuit Judges.

PELL, Circuit Judge.

Plaintiffs-appellants Lawrence and Algerie Mitchell appeal from the judgment of the district court in dismissing their cause against Archibald & Kendall, Inc. (A & K) for failure to state a claim for which relief can be granted. The major legal question presented in this diversity case is whether the owner or occupier of land has a duty of reasonably guarding an invitee against criminal attacks that take place beyond the boundaries of his premises and on a public thoroughfare.[1]

---

1. In his memorandum opinion, the district court judge stated that Mitchell was parked in his truck near defendant's place of business. After citing cases holding that the liability of a landowner to an invitee for criminal acts is generally limited to criminal acts occurring *on the premises* and still other cases recognizing an occupier's duty to protect invitees *beyond* the boundaries of the premises by providing means of ingress and egress reasonably free from hazardous physical conditions, the district court judge asserted:

> Plaintiff Mitchell's injury neither occurred on an ingress or egress to defendant's premises nor resulted from hazardous physical conditions. Further, the criminal act in question did not occur on defendant's premises but on a public street. This Court is of the opinion that defendant's duty as a landowner should not be extended to such a degree.

The complaint sets forth the following facts. Lawrence Mitchell, accompanied by his wife and two grandchildren, drove a truckload of A & K's products from New Jersey to Chicago and tendered the cargo for delivery to A & K's employees at its warehouse on Fulton Street at 9:30 a. m. on November 12, 1973. At the time when the Mitchells arrived, A & K's employees were already loading a truck in the receiving area. Because A & K's receiving dock area allowed only one truck to be unloaded at a time, A & K's employees directed and ordered Lawrence Mitchell to remain in his truck and to park it on the area of Fulton Street immediately opposite A & K's warehouse and adjacent to its driveway until they could unload it.

The complaint alleged that it was A & K's practice, custom and habit over a period of several years openly and visibly to use the area directly in front of and immediately surrounding the receiving area of its warehouse as an extension of the receiving dock area and a parking area for trucks waiting to unload deliveries to and for A & K at its place of business. After Mitchell parked his tractor-trailer on Fulton Street as ordered by A & K's employees and while sitting in the cab with his family, two unknown males approached him and demanded his money. When Mitchell refused this unlawful demand, one of the men produced as 12-gauge shotgun and, from a distance of approximately three feet, fired it directly into Mitchell's face. The shotgun blast caused permanent injuries to Mitchell.

A & K's employees had experience on repeated occasions prior to November 12, 1973, of various criminal acts on and about A & K's premises. The complaint alleges that A & K knew or should have known of the high risk of drivers being subjected to a criminal attack and assault while waiting in the cab of a truck parked in the area. A & K allegedly knew that some three weeks earlier an armed robbery was perpetrated against another truck driver "while parked on defendant's premises waiting to make a

delivery at said private warehouse dock." The Mitchells had no knowledge or means of becoming aware of the inherent risk, dangers and probabilities of a criminal assault associated with attempting to make deliveries at A & K's warehouse or in parking on the area of Fulton Street as directed by A & K's employees.

The complaint set forth five duties which A & K assertedly breached. According to the complaint, it was A & K's duty to exercise ordinary care to maintain its premises and the adjacent areas in a reasonably safe condition so as to avoid leading Mitchell into a dangerous and perilous risk of injury by the criminal conduct of third persons of which A & K was aware. A & K further owed Mitchell the duty to exercise reasonable care to provide a reasonably safe means of ingress and egress, both within the confines of the premises owned and controlled by A & K and beyond the precise boundaries of such premises. A & K owed the Mitchells the duty to exercise reasonable care to protect them from criminal acts of third persons while on A & K's premises and beyond the precise boundaries of such premises and to provide a reasonably sufficient number of servants or employees to afford reasonable protection to invitees. A & K owed Mitchell the duty to give adequate and timely notice and warning of latent or concealed perils which were known to A & K but not to the Mitchells. Finally, according to the complaint, it was A & K's duty towards the Mitchells to keep its premises and the immediate adjacent area reasonably well policed and to exercise reasonable care to see that its invitees were protected from injury from criminal acts of third persons and to take reasonable steps to prevent injury to invitees.

I. Claimed Error in District Court's Use of Rule 12(b)(6)

An initial issue in the present appeal is whether dismissal under Rule 12(b)(6), Fed. R.Civ.P., was procedurally proper. The plaintiffs-appellants contend that the dis-

---

Accordingly, because plaintiffs have not shown any existing duty of defendant, defendant's motion to dismiss the complaint is granted.

trict court *found* that plaintiff Mitchell's injuries occurred neither on an ingress nor an egress to A & K's premises and that the criminal act occurred on a public street instead of on A & K's premises. They assert that the issues decided by the district court's opinion involved one of a material fact, *i. e.,* did the attack on Mitchell take place on A & K's premises? The plaintiffs-appellants assert that their complaint alleges extensive and sufficient facts to support the allegation that the area of Fulton Street is a part of A & K's premises, noting that under Illinois law the word "premises" does not have one precise and fixed meaning in law and that its definition is dependent on the underlying factual circumstances and the context in which the term arises.[2] They insist that through the habit and practices of A & K, the public way in question has become an integral adjunct of A & K's business at its Fulton Street address and that a jury might determine that the accident occurred on A & K's premises. The plaintiffs-appellants thus read the district court's memorandum opinion as suggesting that an affirmative answer to the question whether the attack occurred on A & K's "premises" would require denial of the motion to dismiss. They argue that the district court erred in granting A & K's motion because factual disputes cannot be resolved by a motion under Rule 12(b)(6).

■ Where the pleadings raise a contested issue of material fact, a Rule 12(b)(6) motion must be denied. *Carroll v. Morrison Hotel Corp.,* 149 F.2d 404, 408 (7th Cir. 1945). In reviewing the grant of a motion to dismiss a complaint for failure to state a claim, it is elementary that all material facts well pleaded in the complaint must be

taken as true. *City of Milwaukee v. Saxbe,* 546 F.2d 693, 704 (7th Cir. 1976). However, the court is required to accept only well-pleaded facts as true in deciding whether the motion to dismiss was properly granted and is not required to accept legal conclusions that may be alleged or that may be drawn from the pleaded facts. *Id., citing Blackburn v. Fisk University,* 443 F.2d 121 (6th Cir. 1971).

■ We think that the district court properly relied upon Rule 12(b)(6) in disposing of the present case. The plaintiffs-appellants' complaint itself distinguished carefully between A & K's "premises" and the adjacent area on Fulton Street which A & K assertedly used as a warehouse parking area. Their present argument that a jury could find that the street area was a part of A & K's "premises" sets forth a new theory of liability. The allegations actually incorporated into the drafted complaint were not sculpted in such a fashion as to articulate that theory. The district court judge in dismissing the cause was in effect ruling that the complaint as drafted was legally insufficient.

The specious character of the plaintiffs-appellants' argument of procedural irregularity is highlighted by their filing of a notice of appeal. In this litigation originally the court's order merely dismissed the complaint and no final judgment was entered.[3] As noted in the margin this case is presently before us for the second time. When the order dismissing the complaint was entered in the district court under Rule 15(a), Fed.R.Civ.P., as construed by this court, the plaintiffs would have had an absolute right to file an amended complaint

---

**2.** The plaintiffs-appellants cite *Gibbons v. Brandt,* 170 F.2d 385, 387 (7th Cir. 1948); *Merchants Import Company v. Exchange Building Company,* 210 Ill. 26, 38, 71 N.E. 22 (1904); and *Julian Foundry Company v. Fidelity and Casualty Company,* 4 Ill.App.2d 301, 305, 124 N.E.2d 48 (1955), in support of their view that the term "premises" is factual and flexible.

**3.** The plaintiffs filed a notice of appeal following the original order of dismissal. Thereafter the case was fully briefed and oral argument was heard. Neither party addressed the ques-

tion of our appellate jurisdiction. Subsequently, this court in the process of examining the record determined that there had been no final judgment entered and the appeal was dismissed on August 30, 1977. Following the dismissal, the plaintiffs in the district court moved to reconsider and set aside the previous order dismissing the complaint and defendants moved to enter final judgment consistent with the prior order. Plaintiff's motion to reconsider the ruling was denied and final judgment was entered with the present appeal following.

embodying the claimed theory that a public street was part of the defendant's premises. *See Fuhrer v. Fuhrer,* 292 F.2d 140, 142 (7th Cir. 1961). By appealing, the plaintiffs-appellants elected to stand on their original complaint and thereby relinquished the legal theory they now assert. It is clear that the district court completely determined that the plaintiffs-appellants had no right of action for a criminal attack in a public street. *See Asher v. Ruppa,* 173 F.2d 10, 11–12 (7th Cir. 1949). That was the issue framed by the pleadings, and the court's summary of the allegations of the complaint was not a determination of fact but merely a narrative recital of the pleaded facts bearing upon the issue of A & K's duty.

██ Finally, and in any event, it appears to us that despite the flexibility which has been accorded by the cases to the term "premises," the proper view is that surrounding streets and sidewalks are beyond the meaning of the term. *Acton v. Wymore School District,* 172 Neb. 609, 111 N.W.2d 368, 371 (1961); *Amos v. City of Fond du Lac,* 46 Wis. 695, 1 N.W. 346, 349 (1879). The underlying rationale appears to lie in the fact that there is no right of control over the public thoroughfare. *Joyce v. United States,* 329 F.Supp. 1242, 1245 (W.D.Pa.1971); *Flodin v. Henry & Wright Mfg. Co.,* 131 Conn. 244, 38 A.2d 801, 803 (1944).

II. Duty to Protect Against Criminal Acts of Third Persons on a Public Street

██ Under Illinois law, a complaint must allege the breach of a duty owed by the defendant to the plaintiff in order to state a cause of action for negligence. *Boyd v. Racine Currency Exchange, Inc.,* 56 Ill.2d 95, 97, 306 N.E.2d 39, 40 (1973). The existence of a duty is a question of law to be determined by the court. *Barnes v. Washington,* 56 Ill.2d 22, 26, 305 N.E.2d 535, 538 (1973). Our answer to the question posed by the complaint must be based on Illinois state law. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Inasmuch as both par-

ties agree that there are no Illinois cases "on all fours" with the present case, we must decide the case as we believe the Illinois courts would. *Loucks v. Star City Glass Company,* 551 F.2d 745 (7th Cir. 1977); *accord, Walker v. Kruse,* 484 F.2d 802, 805 (7th Cir. 1973). And we must give some deference to a district judge's interpretation of the law of the state where he sits unless his legal determination is clearly wrong or unreasonable. *Cf. Cameron v. Law,* 538 F.2d 763, 765 (7th Cir. 1976).

Our task in the instant case is precise and clear. A & K concedes that under *Neering v. Illinois Central R. R. Co.,* 383 Ill. 366, 50 N.E.2d 497 (1943), an owner or occupier of land in Illinois owes a duty to invitees *on his premises* reasonably to guard against criminal acts of third parties when knowledge of previous incidents or circumstances charges him with knowledge of this danger. Similarly, the Mitchells rely upon *Neering* and its progeny as supporting the proposition that the Illinois cases clearly establish that where the defendant-invitor has knowledge of previous criminal acts, the defendant becomes charged with the responsibility to protect its invitees from other illegal acts. Accordingly, we must begin with this leading Illinois case regarding a landowner's duty to protect against the criminal acts of third parties and trace the subsequent Illinois reading of its underlying rationale. If A & K had no duty under the circumstances disclosed in the complaint, the district court's order must be affirmed. If A & K was under a duty to the Mitchells, the court's order must be reversed.

One preliminary comment is in order before turning to an analysis of the sufficiency of the complaint under Illinois law. The parties have both asserted that there is no Illinois decision reflecting the exact circumstances of the present case. Nonetheless, there quite clearly are a number of very recent Illinois cases which have considered the issue of a landowner's duty to protect tenants or invitees against the criminal acts of third persons. Although all of these cases made some reference to the holding or rationale of *Neering,* the parties have cited

none of them in either their original briefs or by way of additional authority under our Rule 11. Even allowing for some time lag for publication, it appears that at least one Illinois Supreme Court decision and several recent decisions from the intermediate appellate courts were available for purposes of citation. Litigants who take their controversy over a personal injury claim from the state court system into the federal courts should take special care to bring all relevant state case law to the attention of this court.

### A. *Neering, Boyd,* and *Fancil*

In *Neering, supra,* the appellant was assaulted and raped at a railroad passenger station located in the heart of a railroad and switching center infested with undesirable characters. Because many "bums and vagrants" were coming into Chicago during the depression years of 1937 and 1938, the area was known as "Hobo Jungle." *See* 383 Ill. at 371–72, 50 N.E.2d 497. The appellant and her sister had repeatedly notified the railroad company's agent of the presence of tramps and hoboes. Yet the company failed to have a single inspection made or a station attendant present at or about the time the appellant daily boarded her 4:59 a. m. train. In reversing an order requiring the entry of a judgment n. o. v. in favor of the railroad company, the *Neering* court determined that a railroad company which knew that there were sufficient numbers of hoboes and vagrants congregating around its passenger station to constitute a source of potential danger likely to result in assaults upon passengers was under an obligation to exercise reasonable care and caution for its prevention. 383 Ill. at 380, 50 N.E.2d 497.

Significantly, the *Neering* court did not purport to ground its ruling on the special relationship of carrier and passenger. The court's opinion noted that the defendant owed Agnes Neering the duty of ordinary care, stating that

> [t]he rule requiring the highest degree of care on the part of railroad companies for the protection of passengers applies only to the operation of trains and immediate incidents of transportation, and as to station buildings and other appurtenances the carrier is required to exercise only ordinary care to keep them in a reasonably safe condition for use.

383 Ill. at 374, 50 N.E.2d at 501. The court thought the decisive question in the case was whether the defendant, who had notice that vagrants were loitering about its station and sleeping in its waiting room, had created a condition which became a menace to the public peace and to patrons using its station. *Id.* at 376, 50 N.E.2d 497.

In *Boyd, supra,* the court affirmed the judgment of the circuit court dismissing the plaintiff's complaint for failure to state a cause of action. The plaintiff contended that a business proprietor had a duty to his invitees to honor criminal demands when failure to do so would subject the invitees to an unreasonable risk. The plaintiff also claimed that the duty arose from the relationship between a landowner and a business invitee. In responding to these contentions, the *Boyd* majority observed that in Illinois the general rule was that a person has no duty to anticipate the criminal acts of third parties. It read *Neering* as establishing an exception to the general rule, observing that that decision, together with many other of the cases, involved the question of whether facts existed which should have alerted the defendant to a risk of harm to his invitees by criminals. The *Boyd* majority further noted that the Restatement (Second) of Torts did not consider the specific issue it was facing. 306 N.E.2d at 41. The dissent in the case pointed out that the majority opinion failed to take into account the principles of law clearly enunciated in Restatement (Second) of Torts, §§ 302B and 449 (1965). *Id.* at 42 (Goldenhersh, J., dissenting).

In *Fancil v. Q. S. E. Foods, Inc.,* 60 Ill.2d 552, 328 N.E.2d 538 (1975), the Illinois Supreme Court considered once again the imposition of a duty upon a landowner to take steps to protect invitees from foreseeable criminal acts committed by third parties. In arguing his position, the *Fancil* plaintiff

relied on the rationale of *Neering, supra; Johnston v. Harris,* 387 Mich. 569, 198 N.W.2d 409 (1972); and §§ 302B, 448 and 499 of Restatement (Second) of Torts (1965).[4] In determining that the amended complaint was properly dismissed, the court acknowledged that risk of intentional or criminal conduct under appropriate circumstances might be a risk against which an actor has the duty to protect another, citing Restatement (Second) of Torts § 302B, Comment e,[5] and § 315.[6]

The analytic approach of the *Fancil* decision is to examine the pleaded facts in light of the liability rules set out in the appropriate sections of the Restatement (Second) of Torts. Quite clearly, the *Fancil* court interprets its earlier *Neering* opinion through the lens of the American Law Institute approach to tort liability. Thus, while the language of the *Neering* opinion expressly stated that its decision rested upon the ordinary standard of care, the *Fancil* court reads that earlier case as holding that a possessor of land owed a duty to the injured person against the risk of harm from the intentional and criminal acts of third persons *"because of* the *special relation* of *carrier and passenger* which existed between the defendant and the injury party." 328 N.E.2d at 542 (emphasis supplied). Moreover, the *Fancil* court leaves no doubt regarding what special relations it has in mind. Thus the opinion in *Fancil* expressly states that Restatement (Second) of Torts § 314A sets forth the special relations which give rise to a duty to aid or protect another against an unreasonable risk of physical harm.[7] 328 N.E.2d at 542. The opinion

---

**4.** Restatement (Second) of Torts § 302B provides:

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

Section 448 provides:

The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

Section 449 provides:

If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

**5.** Restatement (Second) of Torts § 302B, Comment e, in pertinent part, states:

There are, however, situations in which the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal, misconduct of others. In general, these situations arise where the actor is under a special responsibility toward the one who suffers the harm, which includes the duty to protect him against such intentional misconduct; or where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account.

**6.** Restatement (Second) of Torts § 315 states:

General Principle

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

**7.** Restatement (Second) of Torts § 314A provides:

Special Relations Giving Rise to Duty to Aid or Protect

(1) A common carrier is under a duty to its passengers to take reasonable action

(a) to protect them against unreasonable risk of physical harm, and

(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2) An innkeeper is under a similar duty to his guests.

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

emphasizes that the duty generally arises where the actor is under a special responsibility toward the one who suffers harm or where a special relation exists. *Id.*

### B. *O'Brien, Trice,* and *Smith*

The decisions of the intermediate appellate courts before and after *Fancil* are consistent with the position that the imposition of a duty to guard against criminal attacks by third persons depends upon both notice of the danger and the existence of a special relationship.

In *O'Brien v. Colonial Village, Inc.,* 119 Ill.App.2d 105, 255 N.E.2d 205 (1970), the issue was whether the amended complaint stated a cause of action for injuries resulting from a criminal assault by a third person which occurred in a parking area of a shopping center. The amended complaint charged the duty to exercise reasonable care to protect customers from unlawful attacks and to warn of dangers. The complaint also charged that the failure to provide security personnel to police the premises, coupled with the fact that the city did not police the parking area, constituted a breach of duty. The appellate court determined that, as a matter of law, the complaint did not allege facts sufficient to create a duty on the part of the defendants to the plaintiff. 119 Ill.App.2d at 106, 255 N.E.2d 205.

In large measure, the *O'Brien* court anticipated the reading of *Neering* later adopted by the Illinois Supreme Court. It explained

that the defendant there was charged with knowledge that the area was infested with tramps and hoboes, that the railroad had notice that these persons were loitering about and even slept in the waiting room, and that the company had in fact been so notified by the plaintiff. The court concluded that the common law duty of reasonable care owed to persons lawfully on premises could not be extended to a duty to guard against the criminal acts of a third person, absent knowledge of previous incidents or special circumstances which would charge the owners with knowledge of the dangers and the duty to anticipate it. *Id.* at 108, 255 N.E.2d 205.[8]

In *Trice v. Chicago Housing Authority,* 14 Ill.App.3d 97, 302 N.E.2d 207 (1973), the court faced the issue whether a landlord has a duty to protect tenants from intentional or criminally reckless acts of other tenants or third persons. The court found it unnecessary to probe the issue of notice but decided the case on the basis of the lack of a "special relationship." In determining that the order granting the defendant's motion to strike the amended complaint must be affirmed, the court first recognized that the Restatement (Second) of Torts § 315 states that there is no duty to control the conduct of a third person to such a degree as to prevent him from causing physical harm to another unless a special relationship exists between the actor and the other. 302 N.E.2d at 208. It further explained that §§ 314A and 320[9] of the Restatement enu-

---

**8.** The *O'Brien* complaint had deleted the original allegations regarding "prior incidents of criminal activity on the premises which were known to defendants." 116 Ill.App.2d at 106, 255 N.E.2d at 207 n. 1. Because our disposition of the present case rests upon *Fancil* and the Restatement (Second) of Torts, we need not determine whether the allegation in the instant complaint of A & K's knowledge of one criminal attack some three weeks prior to the robbery of Lawrence Mitchell distinguishes this case from *O'Brien.* Arguably, a possessor of land who has knowledge of one incident possesses sufficient notice.

**9.** Restatement (Second) of Torts § 320 provides:

Duty of Person Having Custody of Another to Control Conduct of Third Persons

One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor

(a) knows or has reason to know that he has the ability to control the conduct of the third persons, and

(b) knows or should know of the necessity and opportunity for exercising such control.

merated certain special relationships, such as carrier-passenger, business invitor-invitee, and innkeeper-guest. *Id.* Because the plaintiff could cite no case in which a "special relationship" has encompassed a landlord-tenant relationship, the court refused to expand tort liability by creating a new duty for landlords to prevent injuries caused by criminally reckless acts of third persons. *See id.* at 209.

In *Smith v. Chicago Housing Authority*, 36 Ill.App.3d 967, 344 N.E.2d 536 (1976), the court faced the plaintiff's fundamental contention that the defendant, as a landlord, had a duty to protect its tenants against criminal acts of third parties which occur on the premises. Citing *Fancil* and § 314A of the Restatement (Second) of Torts, both *supra,* the court observed that there are special legal relations which give rise to a duty to protect another against unreasonable risk of physical harm. The court affirmed a dismissal of the second amended complaint. In giving its answer to the dispositive question of the existence of a legal duty owed to plaintiff by defendant, the *Smith* court indicated its view of the policy arguments suggesting the imposition of a duty to protect against criminal acts upon a landlord:

> Requiring an owner to repair and maintain the property imposes a reasonable and essential social duty. There is no requirement reasonable or otherwise which any court could impose upon property owners which could conceivably prevent occurrences such as described in plaintiff's complaint. This type of crime springs from complex social and other causes far beyond rectification by any court. To impose liability in the case before us would unjustly place upon de-

fendant as a property owner a legal duty which is impossible of performance. 344 N.E.2d at 540.

C. Liability Under the Restatement (Second) of Torts

In this appeal, A § K's basic contention is that under Illinois law it owed *no* duty to the plaintiffs-appellants under the facts stated in the complaint. The Mitchells contend that A & K had certain duties because the Illinois courts have recognized the views stated in the Restatement (Second) of Torts. For purposes of this appeal, it is conceded that Lawrence Mitchell was an invitee. *See also* Restatement (Second) of Torts § 322. Thus, his relationship with A & K was that defined in § 314A(3). *See* note 7 *supra.* Thus, the Illinois courts would presumably determine that Restatement (Second) of Torts § 344 controls.[10]

That formulation of the liability rule clearly precludes any possibility of A & K's legal responsibility. A possessor of land is subject to liability to business invitees "while they are upon the land." In the present case, the Mitchells were parked upon a public thoroughfare. It is true that A & K would not have endured much inconvenience by warning the Mitchells that there was the possibility of an armed robbery in that area of Fulton Street. Our task, however, is not to measure the moral blame or worth of A & K. The Illinois cases have retreated from the broad view of tort liability espoused in *Neering* by accepting the liability rules formulated by the American Law Institute. Because the clear wording of the appropriate section denies the business proprietor's liability, we fulfill our adjudicative function by adhering to its formulation.

10. Restatement (Second) of Torts § 344 provides:

Business Premises Open to Public: Acts of Third Persons or Animals

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public *while they are upon the land* for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it. [Emphasis supplied.]

Alternatively, the Illinois courts, we believe, would rule that Comment c to § 314A controls.[11] We do not regard the defendant-appellee's concession that Lawrence Mitchell was an invitee on the date and time of his injury as an irrevocable waiver of its defense that Mitchell ceased to be an invitee at the moment when he left the receiving dock area and returned to the street. Under the direct wording of Comment c, it is clear that A & K had no duty to the Mitchells. The district court's dismissal of the complaint because of the want of any existing duty comports with that analysis.

For the reasons hereinbefore set forth, the judgment dismissing the cause must be and is

AFFIRMED.

FAIRCHILD, Chief Judge, dissenting.

The crucial question involved in this case is whether, under Illinois law, and accepting the averments of the complaint as true, defendant owed plaintiff any duty which was breached. I have no quarrel with the general proposition adopted by the majority that no duty is owed to protect against criminal acts of third persons on a public street. However, I do not believe this proposition fits the facts of this case. Plaintiff alleged that defendant ordered him to remain in his truck and park it on a street when defendant knew or should have known that plaintiff would be in danger of criminal attack. Plaintiff followed defendant's instructions and was subsequently shot in the face. In my view, this affirmative conduct of defendant greatly increased the risk of harm to plaintiff, thus creating a duty on defendant to warn plaintiff of the danger or to direct plaintiff to a place of safety until the delivery could be made.

The principle that affirmative conduct by an actor can create a duty to exercise rea-

sonable care is recognized in the Restatement (Second) of Torts, § 302B, Comment e, which provides in relevant part:

There are, however, situations in which the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal, misconduct of others. In general, these situations arise where the actor is under a special responsibility toward the one who suffers the harm, which includes the duty to protect him against such intentional misconduct; *or where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account.* (Emphasis added.)

I conclude that Illinois courts would follow the position of the Restatement and find a duty owed by defendant to plaintiff under the facts of this case.

---

11. Restatement (Second) of Torts § 314A, Comment c states:

The rules stated in this Section apply only where the relation exists between the parties, and the risk of harm, or of further harm, arises in the course of that relation. A carrier is under no duty to one who has left the

vehicle and ceased to be a passenger, nor is an innkeeper under a duty to a guest who is injured or endangered while he is away from the premises. Nor is a possessor of land *under any such duty to one who has ceased to be an invitee.*