**Michael HIGGINS, Plaintiff,**

v.

**Marvin T. RUNYON, Postmaster General of the United States, Defendant.**

Civil Action No. 94–40550.

United States District Court,
E.D. Michigan,
Southern Division.

March 13, 1996.

Denise M. Hart, Leo A. Nouhan, Fiott, Nouhan & Hart, P.C., Southfield, MI, for plaintiff.

Charles F. Holman, United States Attorney's Office, Detroit, MI, for defendant.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

GADOLA, District Judge.

The defendant, Postmaster General Marvin T. Runyon, has filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), contending that this court lacks subject matter jurisdiction over the plaintiff's sex discrimination claim because the plaintiff failed to file his complaint within the statutory time period. In the alternative, Runyon moves for summary judgment under Rule 56(c), on the ground that the plaintiff is not entitled to punitive or compensatory damages or a jury trial in this Title VII action.

### I. Factual and Procedural History

On July 29, 1989, the plaintiff, Michael Higgins, filed a complaint with the Postal Services' EEO Complaints Processing Division, alleging sexual discrimination. That complaint was based upon the facts surrounding Higgin's resignation and reinstatement at the Rochester Post Office. Higgins

resigned from his position as carrier technician at the Rochester Post Office on December 12, 1977. At that time his compensation rate was Level 6, Step 5. On July 24, 1982, Higgins was reinstated to that office as a City Carrier at a compensation rate of Level 5, Step 1. He filed his EEO Complaint because he believed the Postal Service paid a reinstated female employee, Janice Harris, a higher rate of compensation than it paid him upon reinstatement.

Following an investigation and a hearing, Administrative Law Judge Henry Perez, Jr. of the EEOC recommended a finding of no discrimination, based on Higgin's failure to demonstrate that the Postal Service's nondiscriminatory explanation was pretextual or unworthy of credence. The Postal Service issued a final agency decision accepting this recommendation on June 28, 1991.

Higgins appealed the Postal Service's final agency decision to the EEOC in Washington, D.C. The EEOC's Office of Federal Operations affirmed the Postal Service's decision of no discrimination, concluding that Higgins had "failed to prove by a preponderance of the evidence that he was discriminated against because of his sex (male) when Higgins was reinstated as a City Carrier at Level 5, Step 1."

Specifically, the EEOC found that Higgins had met his initial burden of establishing a prima facie case of discrimination under the standard articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Then the burden shifted to the agency to proffer a legitimate and nondiscriminatory reason for reinstating a comparable female employee at a higher level of pay. The EEOC found that human error was the reason for the Harris' reinstatement and that this was not probative of sex discrimination.

To maintain his claim, Higgins had to meet the burden of showing that the agency's actions were actually a pretext to mask dis-

crimination, either because the agency more likely had a discriminatory motive or because the stated reasons lacked credibility. The EEOC found that Higgins failed to present any persuasive evidence demonstrating that the agency discriminates against male employees in determining salary at reinstatement or to refute the agency contentions that Harris' pay level was erroneous and not based on discrimination.[1] The EEOC concluded that Harris' reinstatement was one mistake in several reinstatements that went undetected.

The January 31, 1992 decision of the EEOC contained a statement of appeal rights which explicitly indicated that Higgins could file a civil action in the appropriate United States District Court or a request to reconsider with the EEOC within thirty (30) days of his receipt of the decision. The statement of appeal rights further indicated that the EEOC had the discretion to reopen and reconsider its decision if Higgins submitted a written request containing evidence or arguments tending to establish that:

1. New and material evidence is available that was not readily available when the previous decision was issued;

2. The previous decision involved an erroneous interpretation of law or regulation or misapplication of established policy; or

3. The decision is of such exceptional nature as to have effects beyond the actual case at hand.

Higgins elected to file a request to reconsider with the EEOC, but did not do so until May 11, 1993, nearly one year and three months later.

In a decision issued on May 12, 1994, the EEOC dismissed Higgin's request to reconsider as untimely. It found that Higgins had failed to provide an "adequate justification for extending the filing period beyond thirty days." This decision contained a statement

---

1. Upon review of seven comparative reinstatements the EEOC specifically found that Higgins failed (1) to show that the Postal Service did not act in accordance with its regulations governing reinstatement, (2) to refute the Postal Service's assertion that several employees, male and female, were reinstated in a manner similar to his, (3) to refute the Postal Service's contention that Janice Harris' reinstatement pay level was erroneous and not based on discrimination, and (4) to demonstrate that any Postal Service official harbored any animus towards Higgins because of his sex.

of appeal rights apprising Higgins of his right to file an action in an appropriate United States District Court within ninety (90) days of receipt of the decision. Higgins filed a complaint with this court on September 1, 1994.

The defendant moves to dismiss Higgin's complaint on two independent, but related, theories. First, the defendant asserts that the complaint is barred because Higgins failed to exhaust his administrative remedies by failing to file his request for reconsideration with the EEOC within the thirty days allowed. This default, the defendant contends, amounts to a failure to exhaust administrative remedies and deprives this court of subject matter jurisdiction over the complaint. The defendant further submits that Higgins is not entitled to have the thirty day limit extended under the doctrine of equitable tolling, because there were no extenuating circumstances preventing him from actively pursuing his administrative remedies and because Higgins cannot demonstrate that he was actively misled by the Postal Service into allowing the deadline to pass.

In response to this portion of the defendant's motion, Higgins contends that his request for reconsideration was "filed only after he became aware of the favorable testimony of a critical witness, Postmaster [John] Kessler, who had not testified at the EEO hearing before ALJ Perez in March 1991." Because he did not become aware of this favorable testimony until after his receipt in April 1994 of a December 1993 arbitration decision involving the issue of Harris' compensation, the thirty day time period should be tolled due to the "deceptive practices of the Postal Services in not producing Kessler" at the March 1991 hearing. Higgins does not present a copy or synopsis of the "favorable" testimony given by Kessler at the Harris arbitration, but alleges that it supports his claim of disparate treatment.

As an alternative ground for dismissal, the defendant claims that this court does not have jurisdiction over Higgin's complaint because it was not filed before the expiration of the 90 day period permitted under Title VII for the filing of these actions. The defendant

submits that, because the EEOC's May 12, 1994 decision denying Higgin's request for reconsideration constitutes a final agency action under 42 U.S.C. § 2000e–16, Higgin's failure to file an action with the district court within the allotted time period bars his claim. This failure to file timely is not excused, the defendant concludes, by the doctrine of equitable tolling.

Higgins offers no explanation for his failure to file within the 90 day period following his receipt of the final EEOC decision and right to sue letter. As before, Higgins asserts that the doctrine of equitable tolling preserves his ability to file this complaint.

## II. Discussion

█ Title VII is the exclusive judicial remedy for claims of sex discrimination, and federal employees alleging such discrimination must exhaust the administrative remedies set forth in section 2000e–16 of Title VII (42 U.S.C. § 2000e–16) and 29 C.F.R. Part 1614, before filing suit in federal court. *Brown v. General Services Administration,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967–68, 48 L.Ed.2d 402 (1976). Title 42 U.S.C. § 2000e–16(c) provides in relevant part:

> Within thirty days of receipt of notice of final action taken by ... the Equal Employment Opportunity Commission ... an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title....

The Supreme Court has required "strict compliance" with the jurisdictional requirements outlined section 2000e–16(c) as "a necessary predicate" to a Title VII suit. *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 94, 111 S.Ct. 453, 456–57, 112 L.Ed.2d 435 (1990). Two related policies justify this strict construction of section 2000e–16, particularly in the context of claims against federal agencies. The first is premised in the doctrine of sovereign immunity. Section 2000e–16 waives the sovereign immunity of the federal government to claims for discrimination and establishes a rigorous administrative and judicial scheme for its enforcement.

As part of this scheme, section 2000e–16(c) is a condition to the federal government's waiver of sovereign immunity and must therefore be strictly construed. *Id.*

The second policy originates from the concomitant goals of the exhaustion doctrine, namely, to preserve the autonomy of the administrative process and to ensure that claimants actively pursue their legal rights. This concern for timeliness is analogous to the established theme of habeas and appellate review jurisprudence, which holds that the proceedings before the initial fact finder are the "main event." *See Anderson v. City of Bessemer City,* 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985); *see also Freytag v. Commissioner of Internal Revenue,* 501 U.S. 868, 895, 111 S.Ct. 2631, 2647–48, 115 L.Ed.2d 764 (1991) (Scalia, J., concurring) (noting that adherence to this principle deters the practice of "sandbagging."). Strict construction of the jurisdictional requirements of section 2000e–16 seeks to discourage a lax or dilatory attitude at the administrative level. As the Fifth Circuit in *Johnson v. Bergland,* 614 F.2d 415, 417–18 (5th Cir.1980) aptly stated:

> The administrative complaint procedures must be complied with. If they are and an adverse decision is rendered on the merits of a complaint, then a complainant is entitled to a *de novo* hearing in federal court. However, if the agency does not reach the merits of the complaint because the complaint fails to comply with administrative procedures the Court should not reach the merits either. Otherwise, the complainant might be dilatory at the administrative level, knowing he can get into federal court anyway.

It should be noted that this strict construction also preserves the "balance, completeness, and structural integrity" of section 2000e–16. *Brown,* 425 U.S. at 832, 96 S.Ct. at 1967–68. As the Supreme Court has recognized, "experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980). Accordingly, the district courts must avoid the temptation to disregard the procedural requirements established by Congress for gaining access to the federal courts merely "out of a vague sympathy for particular litigants." *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984).

The case law interpreting section 2000e–16 clearly provides that failure to comply with the filing deadlines contained in that section is an appropriate basis for dismissal of a Title VII action. *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 93–94, 111 S.Ct. 453, 456–57, 112 L.Ed.2d 435 (1990); *Donaldson v. Tennessee Valley Authority,* 759 F.2d 535, 538 (6th Cir.1985). Those cases have recognized an exception, however, in limited situations where the doctrine of equitable tolling applies. *Irwin,* 498 U.S. at 95–96, 111 S.Ct. at 457–58 (establishing a rebuttable presumption that equitable tolling is applicable to suits against the federal government). This doctrine has been invoked sparingly and is generally applicable in situations where the claimant has actively pursued a remedy or where the claimant was induced by the misconduct of his adversary or the agency into allowing a deadline to pass. *Irwin,* 498 U.S. at 96, 111 S.Ct. at 457–58; *Hamilton v. West,* 30 F.3d 992, 994 (8th Cir.1994) (invoking the equitable doctrine only where the claimant's untimeliness resulted from a "deliberate design" of the adversary or from actions which the adversary "should unmistakably have understood" would cause delay); *Polsby v. Chase,* 970 F.2d 1360, 1363 (4th Cir.1992) (same). To invoke this doctrine, therefore, the plaintiff must show that he was actively pursuing his legal rights and that he was actively misled by the agency into allowing the administrative deadline to pass. *Id.*

Higgins has not shown that the doctrine of equitable tolling is applicable to this situation. As the discussion above demonstrates, Higgins must present evidence indicating both that he was actively pursuing his claim and that he was misled by the Postal Service into allowing the relevant administrative and statutory deadlines pass. Higgins has simply failed to adduce evidence of either.

The record discloses three independent instances where Higgins failed to file timely with the administrative agency or this court. First, Higgins filed his request for reconsideration with the EEOC more than one year after the deadline for such requests. Second, Higgins filed this action, based upon the denial of his request for reconsideration, some two weeks after the expiry of the ninety day period prescribed for such filings. Finally, Higgins responded to the defendant's motion to dismiss more than one month after the ten day period permitted for such responses by Local Rule 7.1(c) (E.D.Mich. Jan. 1, 1992). These failures to file timely demonstrate a palpable lack of diligence by Higgins in pursuit of his discrimination claim and justify dismissal of Higgin's complaint. *Polsby v. Chase,* 970 F.2d 1360, 1363 (4th Cir.1992) (holding that a grant of equitable relief requires diligence by the claimant); *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1725–26, 80 L.Ed.2d 196 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").

Similarly, Higgins has presented no evidence that he was actively misled by the Postal Service into allowing his administrative deadline to lapse. Higgins merely contends that the Postal Service's failure to call Postmaster John Kessler as a witness in the original administrative hearing before Administrative Law Judge Perez constitutes misconduct which would justify the equitable tolling of the statute of limitations. Higgins claims that he only became aware of the favorable nature of Kessler's testimony in April 1994, upon receipt of the Harris arbitration decisions and that this delay was directly attributable to the Postal Service's "deliberate refusal" to produce Kessler at the March 27, 1991 hearing. In support of this argument, Higgins relies on the Fourth Circuit's holding in *Weick v. O'Keefe,* 26 F.3d 467 (4th Cir.1994).

This court is not convinced that *Weick* supports Higgin's equitable tolling argument. In *Weick,* the claimant contacted an EEO counselor and alleged that she was the victim of sexual discrimination within 30 days of when she was denied a promotion. She actively sought out the individuals responsible for the promotion decision during the informal counseling process contemplated by the regulations, and asked them specific questions relating to the qualifications for the position she was denied. These individuals, one of whom was a high ranking EEO officer, gave her what appeared to be honest and detailed answers which convinced her that the matter had been satisfactorily resolved. Years later, when she finally discovered that these individuals had lied to her, she resumed the administrative complaint process. Her complaint was dismissed as "untimely" by the agency, the EEOC and, ultimately, the federal district court.

The Fourth Circuit reversed, concluding that, even if the agency could show that Weick's administrative filing was barred by a statute or regulation, the claim should be allowed on equitable grounds. *Weick,* 26 F.3d at 470. The court found that the "deliberate misconduct" of these individuals had "lulled [Weick] into inaction," and that, under these circumstances, equitable principles justified excusing an untimely filing. *Id.* at 470–71.

It is clear from the evidence presented that the factors justifying the application of the equitable tolling doctrine in *Weick* are conspicuously absent in this case. Review of the administrative record in this case discloses no attempt on the part of the Postal Service to "deliberately lull" Higgins into inaction in pursuit of his claim or the evidence supporting it. Specifically, the record does not substantiate Higgins' complaints of misconduct by the Postal Service regarding Postmaster John Kessler. Indeed, that record discloses that Higgins was made aware before the August 10, 1990 administrative hearing that the Postal Service did not intend to call Kessler as a witness. That record also discloses that Administrative Law Judge Perez adjourned the March 27, 1991 hearing specifically to allow the parties to secure additional witnesses. Higgins was thus provided with a more than ample opportunity to secure Kessler as a witness during the nine months of the administrative hearing before Administrative Law Judge Perez. Despite this, Higgins made no attempt at the

August 10, 1990, March 27, 1991 or April 25, 1991 hearings to call Kessler as a witness, to preserve his right to call Kessler at a later time, or to adjourn the proceedings to seek information from or about Kessler. Higgin's failure to do so can not be attributed to any misconduct on the part of the Postal Service.

Even if this court found the Postal Service's "deliberate refusal" to produce Kessler as a witness at the March 27, 1991 hearing to be comparable to the egregious misconduct in *Weick,* the doctrine of equitable tolling would not excuse Higgin's untimely filings in this case. In reaching its conclusions, the *Weick* court found not only that the agency officials had engaged in misconduct, but that Weick reasonably relied upon the misrepresentations given by those individuals. *Id.* at 470. In light of the fact that one of the individuals was a high ranking EEO officer, the court concluded that Weick's reliance was "perfectly reasonable." *Id.* In the context of an acrimonious, adversarial administrative proceeding, Higgins cannot credibly assert that he reasonably relied upon the Postal Service's failure to call John Kessler as a justification for his failure to pursue his administrative claim. Higgins has utterly failed to demonstrate any misconduct or reasonable reliance of a nature or to a degree sufficient to justify invoking the doctrine of equitable tolling.

██ Finally, even if this court found that equitable principles justified excusing Higgin's failure to timely request reconsideration of the EEOC's adverse January 31, 1992 determination, this court could not grant such relief in light of Higgin's failure to timely file this civil action. Higgins does not dispute that the EEOC's May 12, 1994 decision, dismissing as untimely his request to reconsider, contained a clear statement of appeal rights indicating that Higgins had ninety days in which to file a civil action. Accepting as true Higgin's assertion that he did not become aware of Kessler's favorable testimony until April of 1994, this court can find no plausible or legitimate reason for why Higgins delayed filing this civil action until September 1, 1994. Indeed, Higgins offers no explanation for his failure to comply with the ninety day time period. Nor does he present any evidence to suggest that the Postal Service engaged in any misconduct which would justify tolling the ninety day period. The doctrine of equitable tolling does not excuse Higgin's failure to timely file this civil action. Higgin's complaint must be dismissed.

## *ORDER*

Therefore, it is hereby **ORDERED** that the defendant's motion to dismiss is **GRANTED.**

**IT IS FURTHER ORDERED** that the plaintiff's complaint is **DISMISSED.**

**SO ORDERED.**