Thomas A. CAMPAU, Plaintiff,

v.

ORCHARD HILLS PSYCHIATRIC CENTER, a Michigan Professional Corporation, Kenneth E. Pitts and Hiten C. Patel, Jointly and Severally, Defendants.

Civil Action No. 96–40310.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 19, 1996.

Thomas R. Paxton, Eggenberger, Eggenberger, McKinney, Weber and Hofmeister, Detroit, MI, for Plaintiff.

Sheldon A. Fealk, Couzens, Lansky, Ellis, Roeder and Lazar, Farmington Hills, MI, for Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

GADOLA, District Judge.

Before this court is the defendants', Orchard Hills Psychiatric Center, Kenneth E. Pitts and Hiten C. Patel, motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed on September 16, 1996. For the reasons set forth below, this court will grant the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I. Background

Plaintiff, Thomas Campau ("Campau"), was employed by defendant Orchard Hills Psychiatric Center ("OHPC") and defendants Kenneth E. Pitts ("Pitts") and Hiten C. Patel ("Patel") who were officers and managers at OHPC and were the employers of Campau. (collectively "Defendants") Campau was employed by OHPC as an independent contractor[1] in the position of Clinical Social Worker. On April 4, 1995, the defendants sent a letter to Campau which stated that they "[would] not require [his] services as an independent contractor after Friday, August 4, 1995." Accordingly, Campau's last day of work was August 4, 1995.[2] On or about September 4, 1995, Campau filed a lawsuit in Oakland County Circuit court against the defendants in this proceeding alleging wrongful dis-

charge and retaliatory discharge.[3] During discovery in the state court action, Campau took the deposition testimony of Drs. Patel and Pitts on November 14, 1995 and February 2, 1996, respectively. Campau claims that their testimony revealed that he was dismissed, at least in part, based on the doctors' perception that Campau was an alcoholic. On or about February 23, 1996, Campau filed a motion for leave to amend the Circuit court complaint to allege violations of Michigan Handicappers Civil Rights Act ("MHCRA"). In the amended complaint, Campau sought to allege that he was fired because of the defendants' perception of his mental or physical condition, i.e. that Campau was an alcoholic. The motion to amend was denied on March 13, 1996 by the Honorable Robert C. Anderson, Circuit Judge, who stated that "my reading of the file does not indicate to me—and of your briefs and what's been submitted to me that there's enough merit to warrant going any further on that amended Complaint." On April 29, 1996, the entire Circuit court matter was dismissed, with prejudice, as plaintiff conceded that discovery had revealed that there was no basis for his wrongful discharge or breach of contract claims. Campau has appealed that dismissal but not the state court's denial of his motion to amend the complaint. Thereafter, on June 11, 1996, the plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC").

On August 27, 1996, Campau filed suit in this court alleging a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Campau claims that he was fired due to a perceived handicap, to wit:

---

1. The issue of whether Campau was an independent contractor and if so, whether he was protected under the Americans with Disabilities Act ("ADA"), *infra*, was not raised by the parties in their briefs. Although the parties, at oral argument on November 6, 1996, stated that that issue is in dispute, this court need not reach that issue, since it will grant the defendants' motion to dismiss for failure to exhaust administrative remedies.

2. Despite the fact that Campau's last day of actual work was Friday August 4, 1995, Campau, in his EEOC Notice of Charge of Discrimination, claims Sunday August 6, 1995 as his last day. As

more fully discussed below, Campau's last day of work, for purposes of this motion to dismiss, is irrelevant. The relevant date is April 4, 1995, the day Campau was notified of his termination. As such, any dispute as to Campau's last day of work is moot.

3. The basis of plaintiff's wrongful discharge and retaliatory discharge claims was that Campau was allegedly terminated in retaliation for the defendants having to defend Campau in a malpractice suit by his former patient. That action against Campau was ultimately dismissed with prejudice.

alcoholism. On September 16, 1996, the defendants brought the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The defendants argue that Campau has failed to exhaust his administrative remedies by failing to timely file a claim with the EEOC and that dismissal is, therefore, appropriate pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) as this court lacks subject matter jurisdiction. Alternatively, the defendants argue that the instant complaint should be dismissed pursuant to 12(b)(6) based on the doctrines of res judicata and collateral estoppel. The defendants contend that the instant ADA claims are the same allegations as the MHCRA claims which were asserted in plaintiff's state court motion to amend the complaint and which were subsequently denied by the Circuit court on the "merits." This court heard oral argument on November 6, 1996.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the district courts to dismiss any complaint which fails "to state a claim upon which relief can be granted." Rule 12(b)(6) affords a defendant an opportunity to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. In applying the standards under Rule 12(b)(6), the court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party. *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995). The court need not, however, accord the presumption of truthfulness to any legal conclusion, opinions or deductions, even if they are couched as factual allegations. *Western Mining Council v. Watt,* 643 F.2d 618, 629 (9th Cir.1981); *Mitchell v. Archibald & Kendall, Inc.,* 573 F.2d 429, 432 (7th Cir. 1978); *Sexton v. Barry,* 233 F.2d 220, 223 (6th Cir.1956). Dismissal for failure to state a claim is disfavored:

4.  42 U.S.C. § 2000e-5(e) states, in pertinent part:

[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir.1994) (stating that a motion to dismiss should be denied unless "it is clear that the plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief.").

## III. Analysis

### 1. Failure to Exhaust Administrative Remedies

At the outset, it should be noted that while the defendants correctly argue that Campau's failure to exhaust his administrative remedies, by failing to timely file a charge of discrimination with the EEOC, is a proper ground for dismissal, they incorrectly argue that such a dismissal should be made pursuant to FRCP 12(b)(1) based on this court's lack of subject matter jurisdiction. The United States Supreme Court, in *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234, 243 (1982), held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *See also Wright v. Tennessee,* 628 F.2d 949, 953 (6th Cir.1980). Accordingly, this court will find that Campau's complaint should be dismissed for failure to exhaust administrative remedies pursuant to FRCP 12(b)(6).

The ADA allows a plaintiff to bring suit within 180 days after the alleged act of discrimination. However, if the plaintiff initially filed a complaint with a state or local Fair Employment Practice agency ("FEP Agency") with authority to adjudicate the claim, he or she is allotted 300 days from the date of the alleged discrimination within which to file a charge of employment discrimination with the EEOC. 42 U.S.C. § 2000e-5(e).[4]

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice oc-

Moreover, in a deferral state, such as Michigan, where there is an agreement between the EEOC and the FEP agency to permit a claimant to file a charge with the EEOC in lieu of first filing with the FEP agency, a filing with the EEOC is timely if it is done within 300 days of the alleged violation even if the claimant does not first file with a state or local agency. *See* 29 C.F.R. § 1601.13.[5]

■ It is well-settled that the statutory period for filing an EEOC charge begins to run on the date that a plaintiff receives notice of termination, not when his employment actually ceases. *See Janikowski v. Bendix Corp.*, 823 F.2d 945, 947 (6th Cir.1987) (citing cases). In the instant case, notwithstanding Campau's "discovery rule" and equitable tolling arguments to the contrary, *see* discussion *infra*, the statutory period began to run on April 4, 1995, the day that Campau was notified that he would be terminated effective August 4, 1995.[6] As such, an EEOC charge was required to be filed by January 29, 1996 which is 300 days from April 4, 1995, the day Campau was notified of his termination. Since plaintiff only filed his EEOC charge on June 11, 1996, that filing was untimely and the instant complaint should be dismissed, pursuant to 12(b)(6) for failure to exhaust administrative remedies.

Campau, however, contends that the statutory 300–day limit should be "equitably tolled" because he was unable to "discover" facts sufficient to allege a claim under the ADA until the depositions of Drs. Patel and Pitts. Specifically, Campau argues that be-

cause he did not know that the defendants allegedly perceived that Campau was an alcoholic until February 23, 1996, the date of Dr. Pitts' deposition, the statutory time limit should be tolled and should not begin to run until that date. In that deposition, Campau argues, Dr. Pitts "*confirmed* [that] ... Mr. Campau's alcoholism was a ·substantial factor in the decision to terminate the plaintiff." (emphasis added). Alternatively, Campau argues that the statutory time limit should be tolled until November 14, 1995, the date of Dr. Patel's deposition, when Campau claims he became aware that "a reason for [Dr. Patel's] decision to terminate [Campau] was his perception of [Campau's] alcoholism." (emphasis supplied by Campau). Campau concludes that by applying "equitable tolling" to either date, Campau falls within the 300 day filing deadline because he filed on June 11, 1996 which is still less than 300 days after either the November 14, 1995 deposition or the February 2, 1996 deposition.

It is apparent, however, that Campau has confused two closely related doctrines, namely, the discovery rule and equitable tolling. In addition, Campau misapprehends how the equitable remedy of tolling, even if it is applicable in this instance, would operate.

### a. The Discovery Rule

■ The essence of Campau's argument is that he did not "discover," until the depositions of Drs. Patel and Pitts, that he had been discriminately discharged and therefore

curred ... *except that in a case of unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred....*

5.    29 C.F.R. § 1601.13 provides, in pertinent part, that:

(c) *Agreements with Fair Employment Practice agencies.* Pursuant to section 705(g)(1) and section 706(b) of title VII, the Commission shall endeavor to enter into agreements with FEP agencies to establish effective and inte-

grated resolution procedures. Such agreements may include, but need not be limited to, cooperative arrangements to provide for processing of certain charges by the Commission, rather than by the FEP agency during the period specified in section 706(c) and section 706(d) of title VII.

6. Although counsel for the defendants argued at oral argument that Sixth Circuit caselaw prescribes that the statutory period begins to run upon notice of termination, not when employment ceased, counsel has nevertheless acquiesced to use August 6, 1996, the date that Campau wrote on his EEOC complaint as his last day of work, as the beginning of the statutory period. Irrespective of what counsel is willing to concede, this court is not prepared to do the same and finds that the statutory period started to run on April 4, 1995.

the 300 day filing deadline should be tolled up to that time. To the extent that Campau is making a "Discovery Rule" type argument, that argument must fail. The discovery rule "postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured...." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir.1990) (Posner, J.), *cert. denied*, 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). "It is not the date on which the wrong that injures the plaintiff occurs, but the date—often the same, but sometimes later—on which the plaintiff discovers that he has been injured." *Id.* For instance, where an employer decides to terminate an employee for an allegedly discriminatory reason but does not convey to the employee the decision to terminate him until a later date, the limitations period would begin to run on the date that the employee is notified of his termination and not on the date that the decision to terminate was made. Furthermore, it is the plaintiff's awareness of *actual* injury, as opposed to *legal* injury, that suffices to trigger the running of the statutory period. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3rd Cir.1994) (citing *Cada*, 920 F.2d at 450).

■ The discovery rule is not applicable in this instance. The discovery rule is only concerned with the date of actual injury since the purpose of the rule is to determine the accrual date of the claim for purposes of when the statute of limitations begins to run. *See Merrill v. Southern Methodist University*, 806 F.2d 600, 604–05 (5th Cir.1986). Simply put, the accrual date in the instant case is the date of firing, April 4, 1995, since it was on that date that Campau became aware (1) that he had *actually* been injured, i.e., discharged, and (2) that this injury had been caused by another party's conduct. *Oshiver*, 38 F.3d at 1391. The accrual date is not the date that the termination took effect, i.e. August 4, 1996, and it most certainly is not the date Campau claims he became aware of

an alleged legal wrong against him, i.e. either November 14, 1995 or February 2, 1996. As such, Campau's discovery rule argument must fail.

**b. Equitable tolling**

■ Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitation if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada*, 920 F.2d at 451. Equitable tolling is inappropriate where a plaintiff has either actual or constructive notice of his rights. *Jackson v. Richards Medical Co.*, 961 F.2d 575 (6th Cir.1992).

■ Campau's equitable tolling argument is that he was unable to ascertain the facts necessary to file an EEOC complaint until February 2, 1996 when he "confirmed" that he was allegedly discharged due to a perceived handicap of alcoholism. Campau contends that while he learned, on November 14, 1995, that "*a*" reason for his termination was the defendants' alleged perception of his alcoholism, he was not able to "confirm" that fact until the February 2, 1996 deposition of Dr. Pitts.

Assuming, *arguendo*, that Campau exercised reasonable diligence, an assumption that is, nonetheless, unsupported by the submissions to this court,[7] his argument that he was not able to "confirm" the alleged discriminatory reason for discharge is, nevertheless, unavailing. As Judge Posner stated in *Cada*: "If a plaintiff were entitled to have all the time he needed to be *certain* his rights had been violated, the statute of limitations would never run—for even after judgment, there is no certainty." *Cada*, 920 F.2d at 451 (emphasis in the original). Judge Posner continued: "And remember that we are speaking not of a judicial complaint, but of an administrative complaint. There is no duty of precomplaint inquiry in EEOC proceedings as distinct from federal court actions (Fed.R.Civ.P. 11)." *Id.* at 452. Here,

---

7. Campau does not suggest, either in his complaint or in the instant pleadings, that he even inquired as to the reason for his termination. However, at oral argument, Campau's counsel represented to the court that Campau had inquired as to the reason for his termination and was told that it was due to the fact that OHPC could not obtain liability insurance as long as Campau was in their employ.

there is no reason why Campau could not have prepared an adequate administrative complaint within days of the November 14, 1995 deposition once he learned that "*a*" reason for the defendants decision to terminate him was, allegedly, their perception that Campau was an alcoholic.

■ As such, even if this court assumes that equitable tolling is warranted until the November 14, 1995 deposition, Campau, nevertheless, misstates his rights under that doctrine. Unlike the situation of equitable estoppel,[8] where a fraudulent concealment by the employer is shown, thereby entitling the court to subtract from the period of limitation the entire period in which the tolling condition is in effect, it is not at all clear that equitable tolling—a doctrine that adjusts the rights of two innocent parties—is as generous. *Cada,* 920 F.2d at 452. In such circumstances, the negligence of the party invoking the doctrine of equitable tolling, i.e. Campau's neglect in failing to file within a reasonable time after learning of the allegedly discriminatory reason for discharge, can tip the balance against the application of the doctrine. *Id.* at 453. As Judge Posner stated:

> We do not think equitable tolling should bring about an automatic extension of the statute of limitations by the length of the tolling period or any other definite term. (citation omitted). It is, after all, an equitable doctrine. It gives the plaintiff extra time if he needs it. If he doesn't need it

there is no basis for depriving the defendant of the protection of the statute of limitations. Statutes of limitations are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose. The statute of limitations is short in [handicapper] discrimination cases as in most employment cases because delay in the bringing of suit runs up the employer's potential liability; every day is one more day of backpay entitlements. We should not trivialize the statute of limitations by promiscuous application of tolling doctrines.

> \*   \*   \*   \*   \*   \*

> Since it is rare that by the end of the day of the adverse action the plaintiff will have all the requisite information, the automatic-extension rule would extend the statute of limitations in virtually all cases, making the ostensibly fixed deadline illusory.

> \*   \*   \*   \*   \*   \*

> When as here the necessary information is gathered after the claim arose but before the statute of limitations has run, the presumption should be that the plaintiff could bring suit within the statutory period and should have done so.

*Cada,* 920 F.2d at 452–53.

Judge Posner concluded, and at least one district court in the Eastern District of Mich-

---

8. Equitable estoppel, also known as fraudulent concealment, is not limited to the limitations context and is frequently mislabelled "equitable tolling." *Allen v. Diebold, Inc.,* 807 F.Supp. 1308, 1314 (N.D.Ohio 1992) *aff'd* 33 F.3d 674 (6th Cir.1994). Equitable estoppel arises when "the defendant takes active steps ... above and beyond the wrongdoing upon which plaintiff's claim is founded to prevent the plaintiff from suing in time." *Cada,* 920 F.2d at 451. *See also Pinney Dock and Transport Co. v. Penn Central Corp.,* 838 F.2d 1445, 1471–72 (6th Cir.1988). Equitable estoppel presupposes that the plaintiff has discovered or should have discovered that the defendant has injured him, and focusses on the efforts—beyond the wrongdoing which plaintiff's claim is founded on—to prevent the plaintiff from suing in time. *See Cada,* 920 F.2d at 450–51. For example, the accrual of Campau's cause of action would be postponed if his employers had told him that they would not plead a limitations defense or provided Campau with forged documents which negated any basis for supposing that Campau's termination was related to his

perceived alcoholism. *See id.* These efforts by the defendants must be viewed separately from the decision to terminate a plaintiff, even if the termination is a pretext for discrimination. *Id.* As such, any attempt by Campau to bring himself within the equitable estoppel doctrine by contending that the circumstances of his termination was a ruse to conceal the intent to fire him because of his perceived alcoholism improperly merges the substantive wrong with the tolling doctrine and must, accordingly, fail. *See id.* at 451. As Judge Posner stated: "It implies that a defendant is guilty of fraudulent concealment unless it tells the plaintiff, 'We're firing you because of your age.' It would eliminate the statute of limitation in age discrimination cases." *Id.* Clearly, Campau cannot advance an equitable estoppel argument on the instant facts. Instead, Campau's contentions are more properly put forth under the doctrine of equitable tolling where there is no allegation of impropriety on the defendant's part. *Hill v. U.S. Dept. of Labor,* 65 F.3d 1331, 1335 n. 2 (6th Cir.1995) (citing *Cada,* 920 F.2d at 451).

igan has agreed, that "a plaintiff who invokes equitable tolling to suspend the statute of limitation must bring suit within a reasonable time after he has obtained ... the necessary information." *Cada*, 920 F.2d at 453. *See also Sherman v. Optical Imaging Systems, Inc.*, 843 F.Supp. 1168, 1180 (E.D.Mich.1994) (agreeing with Judge Posner's analysis).

In this case the time between Campau's obtaining the "necessary information," i.e. November 14, 1995 (more than two months before the statutory period which ran on January 29, 1996) and the time he filed his EEOC complaint, June 11, 1996, was almost seven months. Such delay evidences "a remarkable degree of lethargy in pursuing claims which should, by the righteous indignation such claims oft-times evoke, cry out for immediate protest." *Allen*, 807 F.Supp. at 1319. As such, this court finds that even if Campau was unable, despite all due diligence, to obtain vital information on the existence of his claim until November 15, 1995, his seven-month delay thereafter in filing charges with the EEOC is not, under any set of facts, reasonable and therefore a dismissal with prejudice is mandated.[9] *See Id.* *See also Sherman*, 843 F.Supp. at 1180.

Moreover, any argument by Campau that he was not "sitting on his hands" during this seven month period, as evidenced by his pursuit of the state court action, is unavailing. Even if this court assumed that Campau sufficiently preserved his right to equitable tolling while he pursued his state court action, a finding that this court is not inclined to make in light of the dearth of caselaw supporting that argument,[10] Campau, nevertheless, cannot satisfactorily explain why he waited for another *one and half* months after the entire state action was dismissed, on April 29, 1996, to file his complaint with the

EEOC on June 11, 1996. Such a delay is likewise unreasonable under the circumstances of this case and therefore dismissal is appropriate.

**2. Res Judicata and Collateral Estoppel**

Because this court finds that plaintiff has failed to exhaust his administrative remedies, it need not address the defendants' res judicata and collateral estoppel arguments.

### Conclusion

In sum, because plaintiff failed to timely file charges of discrimination with the EEOC and because he is not entitled to the application of any equitable principles which would excuse his tardiness, the defendants' motion to dismiss will be granted pursuant to FRCP 12(b)(6) for plaintiff's failure to exhaust administrative remedies.

### *ORDER*

**IT IS HEREBY ORDERED** that the defendants', ORCHARD HILLS PSYCHIATRIC CENTER, KENNETH E. PITTS and HITEN C. PATEL, motion to dismiss is **GRANTED** and plaintiff, THOMAS A. CAMPAU's claims remaining before this court are **DISMISSED.**

**SO ORDERED.**

---

9. Even if this court were to assume that Campau did not obtain the necessary information to file an EEOC charge until after the February 2, 1996 deposition, a finding that this court is not prepared to make, this court would still conclude that dismissal is warranted. In that case plaintiff's delay in filing an EEOC charge would have been more than four months, a delay which this court would still find to be unreasonable.

10. Plaintiff directs this court to *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). However, the Court in *Ir-*

*win* actually held that: "We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Id.* at 96, 111 S.Ct. at 458. Clearly, plaintiff, in order to preserve his legal rights under the ADA, was required to file an EEOC complaint within a reasonable time after obtaining the necessary information which would bear on an ADA claim. Maintaining a state court action is not a sufficient exercise of due diligence to preserve Campau's legal rights under an ADA claim.