**William Franklin HUPKA, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF DEFENSE, Defendant.**

No. Civ. 98–40152.

United States District Court,
E.D. Michigan,
Southern Division.

March 14, 2001.

Lyle D. Russell, Jr., Russell, Stoychoff, Troy, MI, for plaintiff.

Nancy A. Abraham, U.S. Attorney's Office, Flint, MI, for defendant.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

GADOLA, District Judge.

Before this Court is Defendant United States Department of Defense's Motion to Dismiss, filed on July 28, 2000. Pursuant to Local Rule 7.1(e)(2), this Court has determined that oral argument will not significantly aid in the disposition of this motion. For reasons set forth below, this Court will grant Defendant's motion.

### Factual and Procedural Background

Plaintiff William Franklin Hupka was employed as an auditor by the U.S. Department of Defense's Defense Contract Audit Agency ("DCAA") from July 31, 1983 until his termination on January 17, 1997. In November, 1993, Plaintiff was diagnosed as suffering from Chronic Fatigue Immune Dysfunction Syndrome ("CFIDS"). In April, 1994, Plaintiff was injured in an automobile accident, suffering a broken neck, bulging disks, and permanent nerve damage. (Pl.Resp. at 2–3.)

On February 15, 1994, Plaintiff requested "reasonable accommodation" from Defendant for his CFIDS disability. In particular, Plaintiff requested the right to work at home or an alternative site near his home and he requested an alternative work schedule. Plaintiff also requested 240 hours of advance sick leave. After seeking and obtaining additional information on Plaintiff's medical condition, Defendant granted Plaintiff's request for advance sick leave and for some of the accommodations he sought. On April 24, 1994, Plaintiff reiterated his request to work at home or an alternative location, and, in an April 26, 1994 memorandum, Defendant again denied that request.

On June 21, 1994, Plaintiff filed a grievance alleging that Defendant violated the Collective Bargaining Agreement

(Def.Ex.2) between Plaintiff and his union by discriminating against him on the basis of his CFIDS disability when it denied his complete request for a reasonable accommodation. (*See* Def.Ex. 7 at 1.) On December 1, 1995, Defendant issued a final decision on Plaintiff's grievance, finding that Defendant had not discriminated against Plaintiff. (*See id.* at 5.) Plaintiff appealed that decision to the U.S. Equal Employment Opportunity Commission ("EEOC").

In a Decision and Order dated August 13, 1997, the EEOC concluded that Defendant had discriminated against Plaintiff "on the basis of disability when the agency failed to reasonably accommodate him beginning in June 1994 by allowing him to work either at home or at an alternate local facility." (Def.Ex. 7 at 12.) The EEOC ordered that Defendant (1) offer Plaintiff a reasonable accommodation of his CFIDS; (2) provide him with "back pay, interest, and all other benefits to which he would have been entitled" and reimburse him for annual and sick leave Plaintiff used because Defendant failed to accommodate him; (3) post a notice to employees that federal law prohibits discrimination on the basis of race, color, religion, sex, national origin, age, or physical or mental disability; and (4) submit a report of compliance with the EEOC's Decision and Order. (*Id.*) The Decision and Order further stated that,

> if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court. It is the position of the Commission that you have the right to file a civil action in an appropriate United States District Court *WITHIN NINETY (90) CALENDAR DAYS* from the date you receive this decision.

(*Id.* at 15 (emphasis in original).)

On April 3, 1998, Defendant provided Plaintiff with a detailed calculation of back pay, interest, and other benefits owed to him. (Def.Ex.6.) That letter also informed Plaintiff that, if he disagreed with Defendant's determination in compliance with the EEOC's order,

> You ... have the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement.... A civil action is subject to the deadline stated in 42 U.S.C. § 2000e–16(c) (Supp. V 1993).... The Commission's 13 August 1997 decision on your complaint contains additional information with regard to filing a civil action.

(*Id.* at 6 at 4.)

On July 9, 1998, the EEOC wrote to Plaintiff stating that, "[w]e have received a report from the agency on the corrective action taken pursuant to the Commission's decision. We have determined that the agency has complied with this decision." (Def.Ex.9.)

During the pendency of Plaintiff's EEOC claim, Defendant removed Plaintiff from his position of employment effective January 17, 1997. (Def.Ex.1.) According to a January 3, 1997 memorandum, Plaintiff was removed for continued absences without leave ("AWOL") and for failing to follow proper procedures as outlined in the Collective Bargaining Agreement. (*Id.* at 2; *see also* Def.Ex. 2 (Collective Bargaining Agreement).) Defendant explained the procedures by which Plaintiff could challenge Defendant's decision to terminate his employment, including informing Plaintiff that, "[y]ou have the right to file a grievance under the negotiated grievance procedures, or file an appeal to the Merit Systems Protection Board (MSPB), but not both." (Def.Ex. 1 at 2.)

On January 30, 1997, Plaintiff filed a formal grievance as to his removal from employment. (Def.Ex.3.) On March 5, 1997, Defendant denied Plaintiff's griev-

ance, thereby completing "the third step of the negotiated grievance procedures." (Def.Ex.4.) Plaintiff, through the American Federation of Government Employees, obtained an extension of the filing time to request arbitration of Defendant's denial of Plaintiff's grievance. (See Def.Ex. 5.) Neither Plaintiff nor his union ever filed a request for arbitration.

On May 1, 1998, Plaintiff filed the instant civil action. According to his Complaint, "Plaintiff brings this cause of action under Sections 501, 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 and 794(a) and the Fifth and Fourteenth Amendments to the United States Constitution." (Compl.¶ 11.) In a rather awkwardly demarcated Complaint, Plaintiff appears to be asserting two primary claims for relief—one under 29 U.S.C. § 791 (see id. ¶¶ 1–27), and the other under 29 U.S.C. § 794(a) (see id. ¶¶ 28–29)—although Plaintiff refer to the Fifth and Fourteenth Amendments as grounds for some relief.

Pursuant to this Court's November 5, 1998 scheduling order, the deadline for discovery in this civil action was set for October 29, 1999, and the deadline for filing dispositive motions was set for November 15, 1999. Thereafter, this Court granted the parties' stipulated request to extend the discovery cutoff to January 1, 2000 and to extend the time to file dispositive motions to January 15, 2000. Thereafter, this Court granted the parties' joint petition to adjourn the final pretrial conference until July 10, 2000 and to adjourn the trial until August 7, 2000.

On June 23, 2000, Defendant filed an Ex Parte Motion to File Dispositive Motion requesting this Court's permission to file a Motion to Dismiss Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. This Court denied Defendant's Ex Parte Motion to File Dispositive Motion as untimely because a motion pursuant to Rule 12(b), "shall be made before pleading" Fed.R.Civ.P. 12(b), and Defendant's submission was filed after the dispositive motion cutoff.

In light of the legal issues raised in the Joint Final Pretrial Order entered on July 20, 2000—including this Court's subject matter jurisdiction, Plaintiff's exhaustion of administrative remedies, and the timeliness of Plaintiff's civil action—which should have been addressed in a motion pursuant to Rule 12(b) rather than at trial, this Court, with some reluctance, reopened the time for filing dispositive motions. Now, Defendant's Motion to Dismiss is before this Court.

**Discussion**

1. **Standard for dismissal for failure to state a claim upon which relief can be granted**

█ Rule 12 of the Federal Rules of Civil Procedure authorizes the district courts to dismiss a claim for relief which fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6) Rule 12(b)(6) affords a defendant an opportunity to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. The Court's inquiry is limited to whether the challenged pleadings set forth allegations sufficient to make out the elements of a claim for relief. *Branch International Services v. Budde*, 890 F.Supp. 659, 661–62 (E.D.Mich.1995), *aff'd*, 89 F.3d 832, 1996 WL 306341 (6th Cir.1996). A claim for relief should not be dismissed unless it appears without doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Scheid v. Fanny Farmer Candy Shops*, 859 F.2d 434, 436 (6th Cir.1988).

In applying the standards under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995); *Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir.1994); *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993). The Court need not, however, accord the presumption of truthfulness to any legal conclusion, opinion, or deduction, even if it is couched as a factual allegation. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987); *Mitchell v. Archibald & Kendall, Inc.,* 573 F.2d 429, 432 (7th Cir.1978); *Sexton v. Barry,* 233 F.2d 220, 223 (6th Cir.1956). Although the pleading standard is liberal, bald assertions and conclusions of law will not enable a complaint to survive a Rule 12(b)(6) motion. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996).

### 2. Analysis

Defendant makes three arguments in support of its Motion to Dismiss: (a) the Court lacks jurisdiction over Plaintiff's Fifth and Fourteenth Amendment claims for relief; (b) Plaintiff failed to exhaust administrative remedies as to his claim concerning removal from employment; (c) Plaintiff's claim that Defendant failed to provide reasonable accommodation should be dismissed as untimely filed. The Court will address each argument in separate sections below.

### a. Whether this Court has jurisdiction over Plaintiff's Fifth and Fourteenth Amendment claims

According to his Complaint, Plaintiff brings this civil action pursuant to "Sections 501, 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 and 794(a) and the Fifth and Fourteenth Amendments to the United States Constitution." (Compl.¶ 11.) Defendant argues that, because the Rehabilitation Act provides the exclusive remedy for claims of discrimination based on a federal employee's disability, Plaintiff cannot maintain claims for relief under the Fifth and Fourteenth Amendments. In response to Defendant's motion, Plaintiff states that, "[i]t appears from a review of the authorities that Plaintiff's relief as a federal employee is limited to that contained in Title VII of the Civil Rights Act of 1964, 29 USC § 794, et seq. Plaintiff, therefore, withdraws the Constitutional claim stated in his Complaint." (Pl. Resp.¶ 4.) Accordingly, this Court will dismiss Plaintiff's Fifth and Fourteenth Amendment claims.

Even if Plaintiff has not withdrawn his Fifth and Fourteenth Amendment claims, this Court would have dismissed them. Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16 provides the exclusive judicial remedy for claims of discrimination based on race, color, religion, sex, or national origin in federal employment. *Tolbert v. Vidaurri,* No. 87–1163, 1988 WL 19172, at *2 (6th Cir. Mar.8, 1988) (unpublished opinion) (citing *Brown v. General Services Administration,* 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)); *Higgins v. Runyon,* 921 F.Supp. 465, 468 (E.D.Mich.1996). The Rehabilitation Act of 1973, 29 U.S.C. § 794a, incorporates the "remedies, procedures, and rights" set forth in 42 U.S.C. § 2000e–16. This has lead every court that has considered the issue presented here to hold that the Rehabilitation Act provides the exclusive judicial remedy for claims based on a federal employee's disability. *See McGuinness v. United States Postal Service,* 744 F.2d 1318, 1322 (7th Cir.1984); *Ward v. Ken-*

*nard,* 133 F.Supp.2d 54, 57 (D.D.C.2000); *Taylor v. Gearan,* 979 F.Supp. 1, 5–6 (D.D.C.1997); *Paegle v. Department of the Interior,* 813 F.Supp. 61, 66–67 (D.D.C. 1993); *Rattner v. Bennett,* 701 F.Supp. 7, 8 (D.D.C.1988). In light of this precedent, this Court agrees that the Rehabilitation Act of 1973 provides Plaintiff with the exclusive judicial remedy in this case.

Therefore, this Court will dismiss Plaintiff's Fifth and Fourteenth Amendment claims for relief.

**b. Whether Plaintiff's claim that Defendant discriminated against Plaintiff by terminating his employment should be dismissed**

■ In this civil action, Plaintiff also seeks to challenge Defendant's decision to remove him from employment on January 17, 1997. Defendant responds that such claim is not before this Court because Plaintiff failed to exhaust his administrative remedies.

■ According to the Sixth Circuit, "[c]laims brought under the Rehabilitation Act, like claims brought under Title VII, require exhaustion of administrative remedies." *Mickulicz v. Garthwaite,* No. 99–4166, 2000 WL 1234326, at *1 (6th Cir. Aug.22, 2000) (citing *Smith v. United States Postal Service,* 742 F.2d 257, 258–62 (6th Cir.1984)). In particular, for claims brought under the Rehabilitation Act, "the procedures of Title VII are incorporated into the statute." *Id.* "Further, 29 C.F.R. § 1614 .105(a) applies to claims under the [Rehabilitation] Act." *Id.* The general purpose of the exhaustion of administrative remedies doctrine "is to permit an administrative agency to apply its special expertise in interpreting relevant statutes and in developing a factual record without premature judicial intervention." *Southern Ohio Coal Co. v. Donovan,* 774 F.2d 693, 702 (6th Cir.1985).

■ "Exhaustion of administrative remedies under Title VII requires strict compliance with the procedures and time limitations set forth in 42 U.S.C. § 2000e–16(c)...." *Askew v. Stone,* No. 94–2153, 1996 WL 135024, at *3 (6th Cir. Mar.25, 1996). As this Court explained in *Higgins v. Runyon,* 921 F.Supp. 465 (E.D.Mich. 1996), there are two related policies that justify a strict construction of Section 2000e–16 as to claims against federal agencies:

> The first is premised in the doctrine of sovereign immunity. Section 2000e–16 waives the sovereign immunity of the federal government to claims for discrimination and establishes a rigorous administrative and judicial scheme for its enforcement. As part of this scheme, section 2000e–16(c) is a condition to the federal government's waiver of sovereign immunity and must therefore be strictly construed.

> The second policy originates from the concomitant goals of the exhaustion doctrine, namely, to preserve the autonomy of the administrative process and to ensure that claimants actively pursue their legal rights.... Strict construction of the jurisdictional requirements of section 2000e–16 seeks to discourage a lax or dilatory attitude at the administrative level.

921 F.Supp. at 468–69 (citations omitted). As the Supreme Court has recognized, "experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

The case law interpreting Section 2000e–16 provides that the failure to comply with the procedural requirements of that section is an appropriate basis for dismissal of a Title VII action. *See, e.g., Irwin v. Department of Veterans Affairs,*

498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Brown v. General Services Administration,* 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Tolbert v. United States,* 916 F.2d 245, 248 (5th Cir. 1990); *Higgins,* 921 F.Supp. at 469. Contrary to Defendant's insistence that the exhaustion requirement is a jurisdictional bar, this Court has held that failure to exhaust administrative remedies in this sort of civil action is not a jurisdictional bar but is a condition precedent to filing a civil action in the district court. *See Kubicki v. Brady,* 829 F.Supp. 906, 910 (E.D.Mich.1993).

Plaintiff is covered by a Collective Bargaining Agreement—to which Defendant is a party—that permits allegations of discrimination to be raised in a negotiated grievance procedure. (*See* Def.Ex. 2 (Collective Bargaining Agreement).) Therefore, any complaint or grievance Plaintiff wished to file on a matter of alleged employment discrimination must have been raised under either the statutory scheme or the negotiated grievance procedure, but not both. *See* 29 C.F.R. § 1614.301(a). Indeed, in the January 3, 1997 Decision to Remove, Defendant explained to Plaintiff that, "[y]ou have the right to file a grievance under the negotiated grievance procedures, or file an appeal to the Merit Systems Protection Board (MSPB), but not both." (Def.Ex. 1 at 2.)

Plaintiff elected the negotiated grievance procedure by filing a timely grievance under the collective bargaining agreement on January 30, 1997. *See* 29 C.F.R. § 1614.301(a) ("An election to proceed under a negotiated grievance procedure is indicated by the filing of a timely written grievance.") Therefore, in order to exhaust his administrative remedies, Plaintiff was required to proceed through arbitration and then appeal any unfavorable arbitrator's decision to the MSPB; only then may Plaintiff seek review of an unfavorable decision in federal court. *See American Federation of Government Employees, Local 2052 v. Reno,* 992 F.2d 331, 336 (D.C.Cir.1993). Here, Plaintiff proceeded only through Step 3 of the negotiated grievance procedure. Plaintiff did not proceed to arbitration, much less to an appeal to the MSPB. Hence, Plaintiff failed to exhaust his administrative remedies.

Therefore, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court will dismiss without prejudice Plaintiff's claim that Defendant discriminated against Plaintiff by terminating his employment. *See Campau v. Orchard Hills Psychiatric Center,* 946 F.Supp. 507, 509 (E.D.Mich.1996) (dismissal for failure to exhaust administrative remedies appropriate under Rule 12(b)(6) rather than Rule 12(b)(1)).

**c. Whether Plaintiff's claim that Defendant failed to provide reasonable accommodation should be dismissed**

■ In this civil action, Plaintiff also seeks damages for Defendant's alleged failure to provide reasonable accommodations. Defendant argues that such a claim is not before this Court because Plaintiff's Complaint was not filed timely.

The Rehabilitation Act of 1973, 29 U.S.C. § 794a, incorporates the "remedies, procedures, and rights" set forth in 42 U.S.C. § 2000e–16, which provides that,

Within 90 days of receipt of notice of final action taken by a department, agency, or unit ..., or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination ... may file a civil action ... in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

42 U.S.C. § 2000e–16(c). According to the United States Court of Appeals for the

Sixth Circuit, "[a] potential plaintiff filing a complaint under ... the Rehabilitation Act has ninety days to file the complaint in federal district court after receipt of the EEOC's right to sue letter." *Jenkins v. Widnall*, No. 99–3918, 2000 WL 553957, at *2 (6th Cir. Apr.28, 2000); *see Tkac v. Veterans Administration*, 610 F.Supp. 1075, 1077–78 (W.D.Mich.1985) ("[T]he ninety day period within which civil actions must be filed clearly applies to suits filed under the Rehabilitation Act of 1973 which allege employment discrimination.").

Contrary to Defendant's insistence that the ninety day time limit is a jurisdictional bar, the Sixth Circuit has held that, "[t]he ninety-day period following dismissal of the charges by the EEOC is not strictly jurisdictional but is rather a condition precedent subject to equitable tolling." *Jenkins*, 2000 WL 553957, at *2 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) and *Truitt v. County of Wayne*, 148 F.3d 644, 646–47 (6th Cir.1998)).

Here, the EEOC issued its decision on August 12, 1997, but Plaintiff's civil action was not filed until May 1, 1998—well beyond the ninety day time limitation. Plaintiff has provided no reason to conclude that the time limitation should be equitably tolled. This Court concludes that, as to the issues raised in the August 12, 1997 EEOC Decision and Opinion, Plaintiff's Complaint was not timely filed and, therefore, those issue are not before this Court.

Defendant issued its decision as to back pay on April 3, 1998, and—as mentioned above—Plaintiff filed this civil action on May 1, 1998, which is within the ninety day time limitation. On its face, it appears to the Court that Plaintiff's Complaint does not include a claim for relief seeking to enforce Defendant's back-pay calculation. Nevertheless, Defendant itself asserts that "the only issue properly before the court is whether the defendant's back-pay calculation was in compliance with the EEOC's determination." (Def.Mot. at 10.)

Therefore, this Court concludes that the only issue before this Court is whether Defendant's April 3, 1998 decision complies with the EEOC's August 13, 1997 Decision and Order.[1] As this Court stated above, whether Plaintiff was wrongfully terminated is no longer before this Court because Plaintiff failed to exhaust his administrative remedies. Hence, Plaintiff cannot seek to challenge his termination through Defendant's April 3, 1998 decision. In other words, for purposes of the remainder of this litigation, this Court will assume that Plaintiff's employment was properly terminated on January 17, 1997.

## Conclusion

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket Entry 20] is **GRANTED**. Plaintiff's Fifth and Fourteenth Amendment claims are dismissed with prejudice; Plaintiff's claim for wrongful termination of employment on January 17, 1997 is dismissed without prejudice; and Plaintiff's claim challenging the EEOC's August 13, 1997 Decision and Order is dismissed with prejudice. The only issue remaining before the Court is whether Defendant's April 3, 1998 decision complies with the EEOC's August 13, 1997 Decision and Order.

**IT IS FURTHER ORDERED** that the July 20, 2000 Joint Final Pretrial Order is **VACATED**.

**IT IS FURTHER ORDERED** that the parties shall prepare and submit by March

---

1. The Court notes, however, that on July 9, 1998, the EEOC wrote to Plaintiff that, in its opinion, Defendant has complied with the August 13, 1997 Decision and Order. (Def.Ex.9.)

22, 2001 a revised Joint Final Pretrial Order that is consistent with this Memorandum Opinion and Order, and that the trial of this matter shall begin the April 3, 2001 trial term.

**SO ORDERED.**